FIDELITY & DEPOSIT CO. OF MARYLAND *v.* DEPOSIT GUARANTY BANK & TRUST CO. *et al.*

(Division B. Dec. 5, 1932.)

[144 So. 700. No. 30284.]

Watkins, Watkins & Eager, of Jackson, for appellant.

288

Fulton Thompson, and **R. H.** and **J. H.** Thompson, of Jackson, for appellee.

290

**Anderson, J.,** delivered the opinion of the court.

Appellee Deposit Guaranty Bank & Trust Company filed its bill in the chancery court of Hinds county against the First National Bank of Jackson, and J. R. Stevens, receiver of that bank, and appellant Fidelity & Deposit Company of Maryland as surety on two guardians' bonds executed by that bank as guardian for Mansfield Dendy and Estella Dendy, minors, to recover eight per cent interest on the funds in the custody of said bank as such guardian from the time they were received by the guardian. Appellant answered and made its answer a cross-bill praying that, if the court should find any liability on the part of the First National Bank and appellant as such surety, it render a decree against J. R. Stevens, receiver of the First National Bank, for the amount due. The cause was heard on amended bill, answer of the defendants, except the First National Bank, and a cross-bill of appellant, and proofs, resulting in a decree against appellant as surety for the interest, as prayed for, and dismissing the amended bill as to Stevens, the receiver of the First National Bank, and also the cross-bill of appellant, and adjudging that the right of subrogation was given appellant after the depositors of the First National Bank were paid in full to the extent of such sums as should be paid by appellant under the decree "as against the First National Bank of Jackson, Mississippi." From that decree, appellant prosecutes this appeal.

The material facts of this case are undisputed. On the 23d day of March, 1927, the First National Bank of Jackson was appointed and qualified as guardian of Estella Dendy and Mansfield Dendy, minors. On July 1, 1927, there was turned over to the guardian for each of its wards approximately six hundred dollars. The first National Bank did not invest these funds, but treated them as ordinary deposits. On January 19, 1931, the bank suspended business on account of its insolvency,

and soon thereafter went into the hands of the Comptroller of the Currency for liquidation. J. R. Stevens, one of the defendants, was appointed receiver. On September 1, 1931, about nine months after the bank had closed, the receiver filed a final account in the chancery court of Hinds county of each of said guardianships, and prayed to be relieved from the trust, and for the appointment of another guardian. On the same day his final account was presented, the chancery court entered a decree appointing appellee Deposit Guaranty Bank & Trust Company of Jackson as guardian of each of said minors. Subsequently there was paid over by the receiver of the First National Bank to the guardian approximately five hundred dollars for each of said minors, which represented the balance of the principal standing to the credit of each of said minors on the books of the First National Bank.

The court held that the First National Bank, as guardian, and appellant, as its surety, were liable for interest on the funds of the wards at the rate of eight per cent per annum from the time they were received by the bank up to the time the receiver turned over the principal to appellee Deposit Guaranty Bank & Trust Company, its successor in the guardianship, and gave the right of subrogation to appellant as such surety against the funds of the First National Bank ''after the deposits of the First National Bank are paid in full to the extent of such sums as are paid by said surety company under this decree, as against the First National Bank of Jackson, Mississippi.''

Appellant's contention is that the First National Bank as such guardian was liable for interest on the funds of its wards at the rate of eight per cent per annum from the time they were received by it until the bank closed, and that the claim therefor is in the same category and entitled to the same dignity as the claims of the other unsecured creditors and depositors of said bank, and in the administration of the affairs of the bank should be paid

by the receiver pro rata along with such claims, and that appellant as such surety is entitled to maintain its cross-bill establishing that right in order to protect its interest as surety for the custodian.

Section 1885, Code of 1930, provides that in case any guardian fails to report to the court the fact that he has money of his ward not needed or allowed to be used in current expenditures, and to ask the order of the court as to the disposition of such money, he shall be charged with interest on the same at the rate of eight per cent per annum during the time of failure. It is unquestioned that the First National Bank as guardian for these wards failed to comply with that statute.

Under paragraph (k), title 12, U. S. Code Annotated, section 248, authority is granted to national bank associations to act as guardian as well as in other trust relations set out in the statute. It is not so expressly provided, but the statute by its plain purpose makes national banks exercising the trusts enumerated in the statute subject to the laws of the state in which they are located governing such trust relations. Clearly under the laws of this state a state bank, or an individual, or a trust company, acting as guardian for these minors, having failed to comply with section 1885, Code of 1930, would be liable for eight per cent interest per annum on the trust funds. We are of opinion that for the same reason the First National Bank is liable, but only up to the time it closed and went into the hands of a receiver, and that this liability is of equal right and dignity as the claims of the other unsecured creditors and depositors of the bank.

The distribution of the assets of an insolvent national banking association is governed by United States Revised Statutes, section 5236, section 194, title 12, U. S. Code Annotated, which provides as follows: "From time to time, after full provision has been first made for refunding to the United States any deficiency in redeeming the notes of such association, the comptroller shall

make a ratable dividend of the money so paid over to him by such receiver on all such claims as may have been proved to his satisfaction or adjudicated in a court of competent jurisdiction, and, as the proceeds of the assets of such association are paid over to him, shall make further dividends on all claims previously proved or adjudicated; and the remainder of the proceeds, if any, shall be paid over to the shareholders of such association, or their legal representatives, in proportion to the stock by them respectively held.''

In the case of White v. Knox, 111 U. S. 784, 4 S. Ct. 686, 28 L. Ed. 603, the Supreme Court of the United States held that when a national bank fails, its business is at an end as a going concern, and no new debt can be created after its failure, and that the receiver of such a bank is liable for interest up to the date of suspension, but not after. In American National Bank v. Williams (C. C. A.), 101 F. 943, 947, the court held that in an action against a receiver of an insolvent national bank to establish a claim which had been declined, the debts of the bank should be liquidated by the receiver ''as of the date when insolvency supervenes,'' and the amount of all debts were to be computed as of that date, but that interest should not be allowed against the receiver subsequent to its suspension.

The record in this case does not show that appellant as surety has paid this interest to the present guardian, Deposit Guaranty Bank & Trust Company. Stevens, the receiver of the First National Bank, contends that for that reason, under the law, the appellant is not entitled to subrogation, and to sustain that position relies on the general rule that a surety is not entitled to subrogation until the whole debt is paid; that the right of subrogation does not arise in favor of a surety until he has actually paid the debt in full for which he is liable as surety—citing, Sheldon on Subrogation (2 Ed.), par. 127, and numerous other authorities to the same effect. Appellant concedes that to be the general rule, but con-

tends that it has no application to the particular facts of this case. Appellant invokes the well-established principle that the relationship of debtor and creditor exists between the principal and surety from the time the contract of indebtedness was entered into, and that if the principal becomes insolvent after the debt is due and before it is paid the surety has an immediate equity to compel the principal, or his legal representative, to pay the liability. The principle is stated thus in 21 R. C. L., p. 1115, section 151: "If a principal becomes insolvent after the debt is due and before it is paid, his surety has an immediate equity against him and actual payment need not be made by the surety to enable him to sustain an action to compel payment of the debt out of his principal's assets." The doctrine in such case rests upon the right as between principal and surety that the surety is entitled to be protected by his principal. 50 C. J., p. 244.

Canton Exchange Bank v. Yazoo County, 144 Miss. 579, 109 So. 1, is somewhat illustrative of the principle. The court in that case held the right acquired by a surety company to a fund retained by a county until completion of the contract arose under equitable subrogation which originated on the day of the execution of the bond by the contractor.

We think appellant's contention is sound, and the result is that the present guardian, the Deposit Guaranty Bank & Trust Company, has a valid claim against the receiver of the First National Bank for interest on these funds from the time they were received by the latter bank until it suspended business, which claim is to be paid pro rata with all the other unsecured creditors and depositors of the bank; depositors having no preference over other general creditors of the bank. In order to reach this result, we are unable to see why it was necessary to make the First National Bank a party to this

296

cause; the receiver being the representative of all parties and interest.

Reversed and remanded.