222 So.2d 820 (1969)
E.E. MORGAN, Appellant,
v.
UNITED STATES FIDELITY & GUARANTY COMPANY, Appellee.
No. 45195.
Supreme Court of Mississippi.
April 14, 1969.
Rehearing Denied June 9, 1969.
*822 Cox, Dunn & Clark, Jackson, for appellant.
Butler, Snow, O'Mara, Stevens & Cannada, Jackson, Snow, Covington, Temple & Watts, Meridian, for appellee.
PATTERSON, Justice:
This is an appeal by E.E. Morgan from a decree of the Chancery Court of Hinds County which was entered pursuant to the prayer of a bill of complaint filed by United States Fidelity & Guaranty Company, appellee and cross-appellant.
The gist of the bill of complaint, which is in the nature of a "creditor's bill," is that United States Fidelity & Guaranty Company is a judgment creditor of E.E. Morgan under a 1965 decree of the Chancery Court of Hinds County in the sum of $2,642,568.35, plus attorneys' fees of $125,000[1]; that as a result of this judgment a lien was created against all of Morgan's assets and properties for the benefit of the complainant; that Morgan was the owner of certain assets and properties which were subject to this lien, but that appellant concealed such assets and property and engaged in a fraudulent course of conduct deliberately designed to hinder, delay, and defraud appellee of the benefits of its lien and thereby evade and defeat the decree against him. The bill further alleges that under the provisions of the 1965 decree Morgan was obligated and specifically required, upon request, to furnish complainant a financial statement showing his current financial status. The bill sought specific performance of this obligation. Additionally, the bill averred that Morgan had a considerable amount of money and other assets, the location, value and particulars of which were unknown to the complainant, and which should in justice and equity be applied to the satisfaction of the judgment against Morgan. The bill contained a detailed prayer for relief, including a prayer for discovery of Morgan's assets and the appointment of a receiver.
In advance of filing his answer, Morgan, by leave of court, filed a special plea of res judicata, merger and estoppel, based upon the judgment in the parent case. After a hearing, the plea of res judicata was overruled and Morgan was granted leave to plead further. Thereupon he filed his answer which incorporated (1) a general demurrer, (2) a plea of nonjoinder of necessary parties, (3) a plea of res judicata, merger and estoppel by the former judgment, and (4) a denial of the legality of the writ of execution.
Paragraphs 8 and 9 of the bill of complaint are as follows:
(8)
Complainant further avers that the money judgment in favor of complainant *823 against defendant is and remains in full force and effect and has been affirmed by the Mississippi Supreme Court and there is now actually due to complainant thereon the principal amount of $2,968,962.11, together with lawful interest thereon from the date of the rendition thereof, together with the 5% damages provided by Section 1971, Mississippi Code of 1942, plus attorneys' fees of $25,000 allowed by the Supreme Court. Said judgment has been duly enrolled and constitutes a lien on the property of defendant. Complainant is informed and believes, and upon such information and belief avers that defendant has a considerable amount of money and of legal and equitable debts, claims and demands due to him from different persons, the names of whom are unknown to complainant, and that said defendant has a large amount of oil, gas and mineral interests and other interests in real estate, stocks of different kinds, securities, promissory notes and other evidences of debt, and other personal property, either in his possession or held in trust for him by others, the situation, value and particulars of which are unknown to complainant, and which ought in justice and equity be applied to the satisfaction of the aforesaid money judgment. Complainant avers upon information and belief that defendant has concealed his assets and resorted to other devices for the purpose of hindering, delaying and defrauding complainant of its rights as a judgment creditor, and complainant has no plain, adequate, speedy and complete remedy at law.
(9)
Complainant avers that in equity and good conscience the assets and property of the defendant should be applied to the satisfaction of complainant's judgment against said defendant, and defendant should be compelled to discover, set forth and disclose all the estate, real and personal, of every description, including goods, chattels, money, book accounts, notes, bonds, mortgages, securities, evidences of debt and choses in action belonging to said defendant, whether standing in his name or in the name of or in the hands of any other person or persons for his use or in trust for him, and the names of the persons who have the possession, custody or control of such real or personal property.
In answering these allegations Morgan admitted the validity and finality of the money decree and that it constituted a lien on his assets, but declined to answer the remaining allegations of Paragraph 8, stating on oath that an answer in this regard might tend to incriminate him. He expressly invoked the privilege against self-incrimination under the Fifth and Fourteenth Amendments to the Federal Constitution and Article 3, Section 26, Mississippi Constitution (1890).
A motion was filed by the complainant for determination of defendant's claim of privilege to refuse to answer. A preliminary hearing was held and the claim of privilege was rejected by the court on the premise that it had not been made apparent that a full answer would incriminate the appellant. Therefore, Morgan was ordered to answer on penalty of having the unanswered allegations of the bill taken as confessed.
Thereupon Morgan filed a supplemental answer under oath which reiterated his claim of the privilege against self-incrimination and continued to decline to answer the allegations of Paragraphs 8 and 9, answering in regard thereto as follows:
Without admission or denial of implication in the crimes involved, this Defendant states on his oath that he fears that an answer could tend to incriminate him under several Mississippi criminal statutes, to which his attention has been called, including those referred to by his Counsel on said hearing, and that further factual explanation would tend to *824 destroy the privilege which he claims under the Constitution of the United States and State of Mississippi.
Thereafter, the court reconsidered its order directing an answer to be filed and acknowledged the applicability of Mississippi Code 1942 Annotated section 2252 (1956), entitled "Larceny  removing property subject to lien out of the county  selling," to a judgment lien. It held that the allegations of concealment in the bill of complaint were sufficient to bring the answer within the constitutional privilege against self-incrimination and that this privilege did extend to an answer in chancery. The court concluded, however, that there had been a specific contractual waiver of the constitutional privilege under the terms of a bond application which provided that appellant would present a financial statement, on request, to the surety companies involved in that particular project. United States Fidelity & Guaranty Company was one of these companies.
Nevertheless, the chancellor upheld the claim of privilege as to that portion of the complaint which stated: "* * * defendant has concealed his assets and resorted to other devices for the purpose of hindering, delaying, and defrauding complainant of its rights as a judgment creditor." It was the opinion of the chancellor that "To hold otherwise would * * * possibly deny the right of immunity from self-incrimination in view of Section 2252, Code of 1942, Recompiled," and that "being forced to answer * * * runs head-on into Section 2252 of the Code which does make such action a crime." The court further ruled that "* * * such averment shall not be taken as having been admitted or confessed by reason of defendant's failure to make answer thereto, nor shall it be considered that defendant has denied said above quoted averment of the Bill of Complaint." Other than the above statement the court reconfirmed its prior order and held that each averment of Paragraph 8 should be taken as admitted.
Thereafter, the hearing was held on the complaint and answer, including the pleas incorporated therein. The demurrer, plea of nonjoinder, plea of res judicata, merger and estoppel by judgment, were all preliminarily overruled. At the trial the complainant presented detailed evidence in support of its bill of complaint. Morgan could not be located for service of process, did not appear at trial, did not testify or offer testimony, and rested his case.
At the conclusion of the hearing the court held (1) that the creditor's bill was not maintainable under Mississippi Code 1942 Annotated section 1327 (1956), but was proper under the ancient equity practice, (2) that a course of conduct was shown indicating concealment of assets when regard was had to Morgan's failure to testify, (3) that the case did not justify an injunction requiring Morgan to pay the judgment on pain of contempt, (4) that complainant was entitled to a full discovery of identity, status and location of assets of every kind, including the names of persons having possession, custody or control of assets, (5) that a receiver should be appointed for collection of appellant's assets, and (6) that Morgan should be enjoined from disposing of any assets which might be owned by him. As to the discovery feature of the opinion, the chancellor ruled that he would require the appellant to furnish a financial statement and that in any event the complainant was entitled to a full discovery, stating: "* * * and whether this be done by a statement by way of discovery or by a financial statement, I think it matters very little." A decree was taken in accord with this opinion from which Morgan appeals.
The court allowed supersedeas of those portions of the final decree which required the filing of financial statements and the making of discovery. Otherwise the application for supersedeas was denied.
On September 11, 1967, over a month after the entry of the final decree of August 7, 1967, appellant filed two motions. *825 One motion was to vacate the final decree as being void, and the other was to disqualify and remove Frank J. Buchanan, the appointed receiver. The first motion was primarily addressed to the jurisdiction of the court. It urged that there had been less than fifteen days between the issuance of the writ of execution and the return date in violation of the requirements of Mississippi Code 1942 Annotated section 1900 (1956). This motion was overruled as the court was of the opinion that since Morgan had perfected an appeal prior to the filing of the motions, it had no jurisdiction to vacate its prior final decree though the court expressed itself as without jurisdiction in the first instance.
With regard to the second motion, the court ruled that the receivership was proper and necessary and therefore should be continued. However, the receiver's power to pursue and collect Morgan's assets, granted by the decree of August 7, 1967, was ordered to be held in abeyance and the receiver was directed to exercise no powers whatsoever except the following: "(a) to hold and preserve the assets which have heretofore been or may hereafter be conveyed and delivered to him as receiver, (b) to make disposition thereof only after first having obtained an order of this Court specifically authorizing such disposition, and (c) such other powers and authority as may, from time to time, be granted by this Court." It was further ordered that in the event the decree is affirmed by the Supreme Court of Mississippi, the receiver shall have and may exercise all of the powers originally granted by the decree. From the latter portion of this decree United States Fidelity & Guaranty Company perfected its cross appeal.
The principal questions presented by the direct appeal, which may also be considered as assignments of error, are:
1. Is a creditor's bill maintainable without a legal execution, followed by a return of nulla bona?
2. Can discovery be compelled against the claim of a privilege against self-incrimination under the Federal and State Constitutions?
Subordinate questions presented are:
1. The validity of the decree for specific performance.
2. The propriety of the appointment of appellee's agent as receiver with broad visitatorial and inquisitorial powers.
The cross-appellant, United States Fidelity & Guaranty Company, assigns as error, among other things, that the lower court erred in holding and directing that any of the powers of the receiver should be held in abeyance pending decision by the Supreme Court.
The first assignment of error is based upon the appellant's September 11, 1967, motion to set aside the final decree of the court because jurisdiction was never acquired due to irregularities in the issuance of a writ of execution and its "nulla bona" return, and therefore the court had no authority to enter a decree. The appellant argues in support of the motion that the issuance of a writ of execution, with a nulla bona return, is the only manner other than under the provisions of Mississippi Code 1942 Annotated section 1327 (1956), in which the chancery court can acquire jurisdiction to hear a creditor's bill.[2]
*826 The chancellor was of the opinion that the appellant's motion was meritorious. He expressed the conviction that the writ had been returned less than fifteen days after it was issued and was void under the provisions of Mississippi Code 1942 Annotated section 1900 (1956), and therefore the court had lacked jurisdiction to hear the bill in the first instance. However, he stated: "(T)his Court has no jurisdiction to decide the questions presented by movant regarding jurisdiction vel non, since this case is on appeal to the Supreme Court of Mississippi * * *."
It is our opinion that the chancellor's conclusions were erroneous except as to the loss of jurisdiction due to the perfection of this appeal. One of the greater maxims of equity is that it delights to do complete justice and not justice by halves. In discussing this principle this Court stated in Shaw v. Owen, 229 Miss. 126, 132-33, 90 So.2d 179, 181 (1956):
It is settled beyond question in this jurisdiction that where a suit is brought in the chancery court and the court takes jurisdiction on any one ground of equity, it will proceed in the one suit to a complete adjudication and settlement of every one of all the several disputed questions materially involved in the entire transaction, awarding by a single comprehensive decree all appropriate remedies, legal as well as equitable, although all the other questions involved would otherwise be purely of legal cognizance * * * Griffith's Chancery Practice, Sec. 28; McClendon v. Mississippi State Highway Commission, 205 Miss. 71, 38 So.2d 325; Myers v. Giroir, [226] Miss. [335], 84 So.2d 525; Duvall v. Duvall, [224] Miss. [546], 80 So.2d 752, 81 So.2d 695.
This principle has been held to apply, though the equitable ground on which the court obtained jurisdiction fails, and only strictly legal matters remain for determination. In Duvall v. Duvall, 224 Miss. 546, 554-55, 80 So.2d 752, 755, 81 So.2d 695 (1955), we held:
"And in this state, the rule goes even to the extent that if the ground of equity fail under the proof, the cause may still be retained to a complete final decree on the remaining issues although the latter present legal subjects only and the decree would cover only legal rights and grant none but legal remedies  that having taken jurisdiction the power of the court to administer full relief is limited by nothing but justice itself."
In this cause the following types of relief were sought by the appellant's bill of complaint: specific performance of contractual obligations, discovery, appointment of a receiver, and the issuance of an injunction. In Griffith, Mississippi Chancery Practice section 24 (2d ed. 1950) a number of subjects are set out over which a court of equity can assume jurisdiction. Among these are suits involving the specific performance of a contract, appointment of a receiver, discovery, and injunctive relief. We conclude that if the chancery court lacked jurisdiction to entertain this suit as a common law creditor's bill, there were allegations which put in issue other theories upon which the court could properly base its jurisdiction. We think it evident that the prayer in the bill of complaint for the appointment of a receiver was sufficient to vest the chancery court with jurisdiction and having once acquired jurisdiction, it extended to all issues in the case. See Shaw, supra, and Duvall, supra, and cases cited therein. We are of the opinion that this assignment of error is not well taken.
We think it appropriate, however to comment on the lower court's opinion in regard to the manner in which a creditor's bill may be brought in the chancery court. Prior to the enactment of Mississippi Code sections 1843, 1844, and 1845 in 1880 the only way in which a creditor's action could be maintained in chancery was by reducing a debt to a judgment in a court of law, having a writ of execution issued on the judgment, followed by a nulla bona return thereon. Once this was accomplished a creditor had run the gauntlet of exhausting *827 his remedies at law and might thereafter entreat the power of equity to grant aid in his behalf. Our cases in regard to this procedure seem to be in accord. In Brown Bros. & Co. v. Bank of Mississippi, 31 Miss. 454, 458 (1856), this Court stated:
It is universally agreed that a creditor cannot go into a court of equity  until he has first obtained a judgment at law upon his debt, and issued execution, and had a return of "nulla bona."
The reason for these strict requirements seems to have been based on problems of jurisdiction rather than procedure. The early case of Parish & Co. v. Lewis, 1 Free. ch. 299, 306-07, explained the situation as follows:
* * * [I]f you wish to reach legal assets of your debtor, and to remove obstacles which obstruct your course at law, it is sufficient that you show a judgment, creating a lien upon those assets; but if you wish to reach equitable assets, or other things not subject to execution at law, you must show that you have exhausted your remedies at law, by a return of an execution unsatisfied, as the foundation of your right to come into this court. In such case, the complainant's right to relief in this court depends upon his having run his execution at law without being able to satisfy his judgment. It is not a mere technical objection, but goes to the very foundation of the suit, and is not waived even by a general answer. The complainant must show an execution returned unsatisfied, and no state of facts will excuse such a return. Brinkerhof v. Brown, 4 John. Ch.R. [N.Y.] 671, 687; McElwain v. Willis et al. 9 Wendall [N.Y.] 548; Screven v. Bostick, 2 McCord's C.R. [S.C.] 416 [16 Am.Dec. 664]; Hadden v. Spader, 20 John. R. [N.Y.] 554; Moore v. Young, 1 Dana's R. [Ky.] 516.
From these early cases it is apparent that the primary function of a "nulla bona" return on a writ was to show an exhaustion of legal remedies, so that a court of equity could assert jurisdiction.
In 1880 the legislature enacted the fore-runner of what is now Mississippi Code 1942 Annotated section 1327 (1956), to "* * * prevent the necessity of a creditor resorting first to a court of law to recover a judgment and then going into equity to secure its satisfaction. * * *" Griffith, Mississippi Chancery Practice section 500 (2d ed. 1950). The statute reads in part as follows:
The said court shall have jurisdiction of bills exhibited by creditors who have not obtained judgments at law, or, having judgments, have not had executions returned unsatisfied, whether their debts be due or not, to set aside fraudulent conveyances of property, or other devices resorted to for the purpose of hindering, delaying or defrauding creditors; and may subject the property to the satisfaction of the demands of such creditors as if complainants had judgments and execution thereon returned "no property found." (Emphasis ours.)
It is evident from the statute that it had profound effects on the prerequisites for the maintenance of a creditor's bill. The procedure of obtaining a writ of execution and a nulla bona return was no longer necessary where sufficient facts could be pled to bring the cause within the purview of Section 1327. We are of the opinion that since the legislature has provided a means whereby a creditor can enter a court of equity by an appropriate bill of complaint, the requirement that he must resort to the more involved and antiquated common law procedure is no longer absolute and controlling. Here the complainant inter alia specifically alleged that appellant had "resorted to other devices for the purpose of hindering, delaying, and defrauding complainant of its rights as a judgment creditor." These are the precise words contained in Section 1327 and we think when taken in conjunction with *828 other allegations, are sufficient to state a cause of action thereunder.
We are of the opinion that the court had jurisdiction in this case, and the fact that the nulla bona return was not made within the time prescribed by statute, did not divest the court of its jurisdiction. We do not mean by the foregoing to hold that a complainant cannot resort to the common law method to establish jurisdiction in a creditor's bill, but this procedure is no longer exclusive, as an action in the nature of a creditor's bill is also maintainable under Section 1327.
The second predominant question of the suit is concerned with whether the constitutional privilege against self-incrimination afforded under the Fifth and Fourteenth Amendments to the Constitution of the United States and under Article 3, Section 26 of the Mississippi Constitution of 1890, applies in civil actions for discovery or to enforce disclosures under a bill of complaint which requires answer under oath, and which is directed by a final decree. If the constitutional privilege is applicable, we must also reach the question of whether it was waived through estoppel.
The peculiar facts of this case are of particular import in considering the second assignment of error. The suit was brought to enforce a prior decree of the chancery court which adjudicated that complainant is entitled to specific performance of the obligations assumed by appellant under each of the various bond applications and indemnity agreements signed by him. It is a civil suit by a judgment creditor to enforce rights under an equity decree. It thus distinguishes itself from the cases cited by the appellant which relate to grand jury investigations and criminal cases. The privilege against self-incrimination in criminal prosecutions is absolute unless effectively waived. However, in civil cases the privilege is not so unequivocal. As a result there are material differences in the rules governing the invocation of the privilege in criminal and civil cases. The following illustrations point to some of the differences. An accused in a criminal case may not be required to take the stand or give any testimony. To the contrary, a witness, if called, in a civil case must take the stand and answer all questions except those which would require him to give incriminating evidence. United States v. Housing Foundation, 176 F.2d 665 (3d Cir.1949) and 98 C.J.S. Witnesses § 441 (1957). Additionally, an adverse inference can be drawn from a defendant's refusal to testify in a civil case whereas no comment or inference might be drawn from the failure of a defendant in a criminal case so to do. In Duratron Corp. v. Republic Stuyvesant Corp., 95 N.J. Super. 527, 533, 231 A.2d 854, 857 (1967), it is said:
No constitutional protection is absolute. Traditionally, the courts have weighed each alleged assault on a constitutional right by comparing the social values, public or private, attending the measures impugned as invalid, with the degree of hazard if any to which the constitutional right or privilege was subjected by such conduct. See Camara v. Municipal Court, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967). The interest of the general public in the fair adjudication by courts of civil disputes between citizens ranks very high in the American polity. The permissible drawing by the factfinder of an inference of inability truthfully to deny a civil claim from a defendant's failure to testify as to relevant facts within his personal knowledge which might refute the evidence adduced against him, is a logical, traditional and valuable tool in the process of fair adjudication. It subserves private justice. We conclude that it does not impair the privilege against self-incrimination.
Moreover, the claim of privilege in a civil case is to be determined by the court and not by the witness as in a criminal case. State v. Myers, 244 Miss. 778, 146 So.2d 334 (1962); Hoffman v. U.S., 341 U.S. 479, 71 *829 S.Ct. 814, 95 L.Ed. 1118 (1951); and Rogers v. U.S., 340 U.S. 367, 71 S.Ct. 438, 95 L.Ed. 344 (1951). The yardstick of adjudication to be used by the courts in ruling upon the privilege in a civil case is whether there is a real and substantial hazard of incrimination resulting from a witness's answer to a bill of complaint or from his testimony in open court. See Marchetti v. U.S., 390 U.S. 39, 53, 88 S.Ct. 697, 705, 19 L.Ed.2d 889, 901 (1968), wherein it is stated:
The central standard for the privilege's application has been whether the claimant is confronted by substantial and "real," and not merely trifling or imaginary, hazards of incrimination. * * *
The chancellor first ruled there was not a substantial and real hazard of self-incrimination involved in the answer under oath, the discovery or the testimonial requirement of the decree; however, on reconsideration he was of the opinion that the claim of privilege should be upheld as to the bill of complaint wherein it states: "* * * Defendant has concealed his assets and resorted to other devices for the purposes of hindering, delaying, and defrauding complainant of its right as a judgment creditor." It was his opinion that: "To hold otherwise would * * * possibly deny the right of immunity from self-incrimination in view of Section 2252, Code of 1942, Recompiled," and that "being forced to answer * * * runs head-on into Section 2252 of the Code which does make such action a crime."
In analyzing the chancellor's findings of fact and their relation to Mississippi Code 1942 Annotated sections 2250 and 2252 (1956), which make criminal the acts of removing property subject to liens out of the state or out of the county without consent or with intent to defraud, we are unable to say that he was manifestly wrong as to the facts or that he misapplied the law with regard to Paragraphs 8 and 9 since the appellant was permitted the privilege as it related to these paragraphs of the bill of complaint. Though we think the chancellor's opinion in regard to Paragraphs 8 and 9 is contradictory to the decree permitting discovery, we cannot state that he erred in legal principle, the error, if any, consisting of the lack of conformity between the decree and the opinion. We conclude this specification of error is not well taken.
We do not reach the broad question of the application of the principles to the other aspects of the suit, i.e., answer under oath, discovery of assets subject to judgment, or testimony as to the location thereof, since it is not necessary to the opinion in view of our subsequent holding that there was a waiver of the privilege.
The next question for consideration and perhaps the most cogent of the suit is whether the appellant waived his constitutional privilege against self-incrimination. There is no doubt that an individual may waive the personal protections and privileges provided by the United States Constitution. See Shepard v. Barron, 194 U.S. 553, 24 S.Ct. 737, 48 L.Ed. 1115 (1904). He may, of course, also waive the personal protections and privileges afforded by the Mississippi Constitution (1890). Waiver may be accomplished by a specific written agreement or by a course of conduct which indicates an intention to forego the privilege. The methods by which the privilege may be lost are discussed at length in 8 Wigmore on Evidence section 2275 (McNaughton Rev. 1961) where it is stated:
Waiver: (a) By contract. It has never been doubted that the privilege against self-incrimination, like all privileges (§§ 2196 and 2197 supra), is waivable. There are two possible ways of waiving: (a) By contract or other binding pledge before trial, or (b) by voluntarily testifying in the case (§ 2276 infra). As to the first of these ways, may a waiver be made irrevocably by contract before trial?
Unless the contract is one which by its circumstances has come within the doctrine of duress or oppression, and is thus voidable on general principles of contract, *830 there is no reason in its present aspect why it should not be binding. The promise to waive may be embodied in an express contract or in a contract implied by the conduct of the parties. In either case, however, two distinctions should be drawn:
(1) A bare contract to waive the privilege will not be enforced specifically. Rather, it will be enforced, where possible, by indirect sanctions similar to those (short of arrest and contempt) available to punish civil litigants who refuse to comply with orders to make discovery  e.g., dismissal of the action. Or the sanction may be loss of employment or of pension or of the right to do business with the government.
(2) Where there are not only the ingredients of an express or implied contract to waive privilege but also a fiduciary relation or other elements of public policy making recognition of privilege unconscionable, the waiver of privilege may be specifically enforced and the witness held in contempt for failure to make disclosure. * * * (Emphasis ours.)
These principles have been applied in a strikingly similar situation by the United States Supreme Court. In Zap v. U.S., 328 U.S. 625, 66 S.Ct. 1277, 90 L.Ed. 1477 (1946), we find:
As we have pointed out in Davis v. United States [No. 404, decided this day 328 U.S. 582, ante, 1453, 66 S.Ct. 1256, 90 L.Ed. 1453], the law of searches and seizures as revealed in the decisions of this Court is the product of the interplay of the Fourth and Fifth Amendments. But those rights may be waived. And when petitioner, in order to obtain the government's business, specifically agreed to permit inspection of his accounts and records, he voluntarily waived such claim to privacy which he otherwise might have had as respects business documents related to those contracts. 328 U.S. at 628, 66 S.Ct. at 1279, 95 L.Ed. at 1481-82.
The elements of public policy necessary for the application of estoppel are apparent in the Zap case since the contracts involved there were with the United States Navy. We think that sufficient fiduciary obligations and questions of public policy exist in this instance to uphold the judgment of the lower court which held that the appellant had specifically waived the privilege.
This Court has heretofore adjudicated that the appellant is obliged to perform each and every obligation assumed by him under each of the indemnity agreements. Morgan v. United States Fidelity & Guaranty, 191 So.2d 917 (Miss. 1966). See also Morgan v. United States Fidelity & Guaranty, 191 So.2d 851 (Miss. 1966), of interest to the former case and this opinion. In the first Morgan case the agreement of indemnity which was entered into with relation to a construction project in Shively, Kentucky was expressly passed upon by the lower court and held to be binding upon Morgan, and this decree was upheld by this Court. By necessity the lower court must have also considered in connection therewith the letter of Morgan accepting the conditions of the Shively application agreement. These instruments, hereinafter detailed, give rise to the equivalent of a fiduciary relationship, that of a principal and surety. 59 Am.Jur. § 221 (1944). There can be little doubt that the surety is entitled to be protected by his principal, in this instance the appellant. Fidelity & Deposit Co. of Maryland v. Deposit Guaranty Bank & Trust Co., 164 Miss. 286, 144 So. 700 (1932) and Ames v. Dorrah, 76 Miss. 187, 23 So. 768 (1898).
In January 1960 R.V. Tyler Co., Inc. and Hyde Construction Company executed an "Application for Performance and Payment Bonds and Indemnity Agreement" Form No. 1. Its purpose was to obligate the appellee as a surety for the performance of a contract entered into by Hyde *831 Construction Company and the City of Shively, Kentucky. The appellant obligated himself to the payment of this bond by letter as follows:
 "Date January 25, 1960
 "United States Fidelity and Guaranty Company
 Baltimore, Maryland
 National Surety Corporation
 San Francisco, California
 Gentlemen:
 Re: Your Co-surety Bond Covering Contract $2,721,419.00
  R.B. TYLER COMPANY, INC., & HYDE CONSTRUCTION
 COMPANY, A JOINT VENTURE
 Favor: City of Shively, Kentucky For construction
 of Sewage System for City of Shively, Ky.,
 Contracts 1, 2, 3, 4, 5 & 6
 Contract & Bond dated January 25, 1960
Attached is `Application for Performance and Payment Bonds and Indemnity Agreement' on Form No. 1 duly executed by R.W. Tyler Company, Inc., a Kentucky corporation, Louisville, Kentucky and R.W. Hyde, Jr., an individual d/b/a Hyde Construction Company, Jackson, Mississippi.
In consideration of your executing as co-sureties the above described bond or bonds, I hereby agree as follows:
That the signing and furnishing of this letter obligates me to the terms and conditions of the enclosed `Application for Performance and Payment Bonds and Indemnity Agreement' on Form No. 1 just as though I were named as one of the applicants therein and my signature were duly affixed thereto.
 Yours very truly,
 /s/ E.E. Morgan
 E.E. Morgan"
It is apparent that this letter is the product of an astute business man. He, of course, knew or should have known that one of the terms of the application was that the surety would have access at all reasonable times to the books and records of the applicant. Another term of the application is: "* * * applicants and any of them will furnish to sureties, upon request and at such reasonable intervals of time as sureties may designate, financial statements showing the current financial position of the applicant of whom such request or statement is made." In view of the terms of this application, appellant's letter acknowledging acceptance of such terms, and our prior opinion that the Shively agreement was a valid and binding instrument, we do not find it necessary to discuss whether or not the technical requirements of a waiver or estoppel were complied with. The case stands in a posture similar to that which existed in Shepard, supra, wherein the Court held that certain property *832 owners had waived or were estopped to assert a denial of due process of law. In explaining the Court said:
Provisions of a constitutional nature, intended for the protection of the property owner, may be waived by him, not only by an instrument in writing, upon a good consideration, signed by him, but also by a course of conduct which shows an intention to waive such provision, and where it would be unjust to others to permit it to be set up. * * * 194 U.S. at 568, 24 S.Ct. at 742, 48 L.Ed. at 1120-21.
* * * * * *
* * * A defense of this nature and upon these facts need not be placed entirely upon the strict and technical principles of an estoppel. While it partakes very strongly of that character, it also assumes the nature of a contract, implied from the facts * * *. It does not in the least matter what we may call the defense, whether it be estoppel or implied contract, or one partaking of the nature of both * * *. 194 U.S. at 565, 24 S.Ct. at 741, 48 L.Ed. at 1119.
Judgments and decrees are entitled to proper respect when rendered and public policy requires nothing less. The citizenry of the state has the right to expect their orderly enforcement and surely the litigants, who have a direct personal or pecuniary interest in the outcome of a suit, have the basic right to demand the enforcement of the judicial processes. The effectiveness of our entire court system rests upon the court's ability to enforce its judgments; otherwise they would become mere "scraps of paper" evidencing only the good intentions of the court, and reducing its orders and the attempted enforcement thereof to an exercise in futility. The thought pervades that the constitutional privilege is largely related to criminal prosecution, which is only to say that the government or state must prove its case against an accused without the aid of the accused's testimony, if he desires to invoke the privilege. However, in a civil proceeding we express doubt that it was ever intended that the privilege could be transformed into an affirmative device whereby a judgment debtor can effectively thwart the processes of the court. Under the peculiar circumstances of this case, a deliberate course of conduct by a judgment debtor to evade the effects of a lawful judgment, we are of the opinion that the lower court did not err in holding that the appellant waived the right to assert the claim of constitutional privilege. The trial judge was under no duty to broaden the privilege against self-incrimination to a point which would effectively place it beyond waiver. See Zap, supra, and Crest Catering Co. v. Superior Court, 62 Cal.2d 274, 42 Cal. Rptr. 110, 398 P.2d 150 (1965).
The next assignment of error is that there can be no specific performance of the contractual provision to produce a financial statement. The appellant contends that there can be no specific performance of this agreement as required by the "Shively" indemnity application since it is barred by res judicata or estoppel by judgment. The appellant argues that in the former case the appellee expressly sought relief by way of specific performance of the obligations assumed in the several bond applications including the one in question, and that the court declined to grant specific performance. An examination of the decree referred to indicates that the court found to the contrary and in fact adjudicated: "Said defendants are obligated to perform specifically each and every obligation assumed by them under the terms of each of the various bond applications and indemnity agreement signed by them in regard to the jobs and bonds described in the *833 bill of complaint as amended," and the decree specifies the various construction projects for which bonds were sought, one of which was:
 "1/25/60 City of Shively, For construction $2,721,419.00 of
 Kentucky Sewage System for City
 of Shively, Kentucky;
 Contracts 1, 2, 3, 4, 5 & 6
The indemnitors on this job being: R.W. Hyde, Jr., E.E. Morgan, Hyde Construction Company, Inc. * * *"
We find no merit in this assignment of error.
The last question presented on direct appeal is the propriety of the judge's action in appointing a former employee of the appellee as receiver for collection of appellant's assets. Appellant vigorously asserts that the receiver should be a completely disinterested party; however, we note a lack of convincing authority to this effect.
In regard to this problem, we find in Griffith, Mississippi Chancery Practice section 474 (2d ed. 1950), the statement that:
While it is the usual and better practice to appoint as receiver an entirely disinterested person, one indifferent as to all the parties, yet inasmuch as competency and capacity to perform the important duties assigned to him in the particular case in hand are requisites, it is within the discretion of the court to appoint one of the parties on good bond, if he stand in no improper relation to the cause. The chancellor acts in this matter upon his own judgment and in his own sound discretion, and is therefore not obliged to accept a person recommended or proposed by the parties; in fact, it may sometimes be his duty not to do so. * * *
We agree with the statement that the chancellor is largely left to his own discretion in selecting a receiver and generally is bound only by the qualification that such individual does not stand in an improper relation to either of the parties. After a close reading of the record we are agreed that the chancellor was well aware of the law in this regard, was satisfied that the individual selected was qualified and found no improper relations with either party. In the absence of a proof of abuse of discretion in the appointment of the receiver we uphold the chancellor's action in this regard. We conclude this assignment is not well taken.
The only assignment of error on cross appeal is the action of the lower court in holding certain powers of the receiver in abeyance pending this appeal because of objections to his competence by appellant. There is no need to reach this question in view of our decision that the chancellor was without error in his selection of the receiver. Since the decree of the lower court provides that the full powers of the receiver would be restored if the appeal resulted in an affirmance, which it does, we withhold further comment.
Affirmed on direct and cross appeals and remanded.
ETHRIDGE, C.J., and JONES, INZER and ROBERTSON, JJ., concur.
NOTES
[1] This decree was affirmed by this Court on November 7, 1966, in Morgan v. United States Fidelity & Guaranty Co., 191 So.2d 917.
[2] This motion asserted, in addition, that the writ of execution had been executed against only one judgment debtor, appellant, although the judgment was against several parties, including R.W. Hyde, and therefore was in violation of Miss.Code 1942 Ann. § 1901 (1956). This argument is not persuasive since (1) the appellee had separate and several judgments against appellant and (2) Hyde surrendered all assets which had not been taken over by appellant.