SMITH, Justice,
Opinion on Motions:
Some members of this Court find misconduct on the part of three Phelps Dunbar attorneys and would impose sanctions due to these attorneys’ filing with this Court an emergency petition for extraordinary relief, a petition which might have been more appropriately entitled “haste makes waste” petition, as it plainly shows what can happen when attorneys get in a hurry during the heat of zealous advocacy in litigation.
I am concerned with the label of misconduct attached by several of the Court’s members to these three attorneys. The controversy at issue was nothing more than a simple misstatement in the language of paragraph three of the petition which was immediately corrected thereafter in paragraph 4(e). Eric Lowery, one of the respondent’s attorneys, complained before Chancellor Dale as well as this Court claiming, “... [w]e seem to be able to get to the Supreme Court, but we could hot get to trial.” Some of the Court’s members, in reaction to Lowery’s complaints about lawyers in Jackson being on standby to rush to the Court, claim that Thomson’s petition is frivolous and further express concerns with unwarranted, so-called emergency petitions ... which have in most instances, either resulted in suspension of trial proceedings or deterred the commencement of trial ... failure to comply with our rules by filing a frivolous motion ... instituting an unwarranted procedure ... or by displaying conduct unbecoming a member of the bar. In fact, the record reveals only one single previous interlocutory appeal by Thomson’s attorneys and that was for a stay in proceedings. This Court denied Thomson’s first requested stay. An interlocutory appeal prior to the one by Thomson’s attorneys was filed by the Attorney General of Mississippi and the District Attorney Glen White, who desired to have this Court allow the criminal matters concluded prior to any trial proceedings on the civil cases. These facts were admitted by Lowery at the hearing before this Court. It appears some of our members are incorrectly crediting the Phelps Dunbar attorneys with these other proceedings.
I am compelled to disagree with the other members finding of negligence by Frank Trapp, Laura Gibbes and Carlton W. Reeves. Additionally, they express displeasure with the lawyers’ failure to give reasonable notice, improper conduct and repugnant gamesmanship, posturing between lawyers, and to express its discontent with the discovery and motion practices of attorneys which impedes the fair and efficient administration of justice in this Court and in the trial courts. While I agree that all of those situations, if true, would warrant this Court in finding misconduct' by the three attorneys and imposing sanctions thereupon, I do not find those described situations existing within the facts of this case, thus they are inappropriate. Some would find all three lawyers guilty of misconduct as above cited and imposes sanctions accordingly. I cannot accept this reasoning nor am I willing to sanction these attorneys under the facts of this case, which constitute nothing more than a simple mistake by Reeves in his drafting of the language in paragraph three of Thomson’s petition filed with this Court. There is a striking absence by these attorneys of any wilful attempt to deceive or mislead this Court, the lower court, or opposing counsel.
This case had as its genesis twenty civil cases filed against Thomson, seventeen of which were pending in the Circuit Court of Forrest County, Mississippi, one in the United States District Court, Southern District of Mississippi, and the remaining two pending in the Forrest County Chancery Court. There also were twelve criminal cases against Thomson, filed in the Circuit Court of Forrest County. These three attorneys were not facing a simple case, but rather multiple cases with complex issues. There were simultaneous discovery deadlines and trial settings so close together in time as to be almost impossible to adequately prepare for trial.
The chancellor refused to grant Thomson’s motion for a protective order on spousal privilege and lack of competency, in complete disregard of M.R.E. 601. He also refused to grant an interlocutory appeal to this Court, and refused to sign orders prepared in advance by Gibbes in contemplation of an ad *479 verse ruling. These facts alone dispel any notion that the actions of these attorneys in representing their client Thomson, involved the filing of a frivolous issue before this Court.
Other Court members ignore Trapp’s concerns that “adverse inference” can be drawn from the defendant’s refusal to testify in a civil case and then used against him at trial. Morgan v. United States Fidelity & Guaranty Co., 222 So.2d 820, 828 (Miss.1969). It is clear that Lowery intended to force Thomson to claim privilege against his wife being compelled to give a deposition, whereupon she would be required to plead the fifth amendment in response to questions posed. Lowery would have then proceeded to use “adverse inference” against Thomson.
Mary Beth Thomson was never competent to testify as a witness in the proceedings against her husband, discovery could not otherwise be sought from her and Thomson’s motion was not frivolous under M.R.E. 601, which provides:
Every person is competent to be a witness except as restricted by the following:
(a) In all instances where one spouse is a party litigant the other spouse shall not be competent as a witness without the consent of both, except as provided in Rule 601(a)(1) of Rule 601(a)(2):
(1) Husbands and wives may be introduced by each other in all cases, civil or criminal, and shall be competent witnesses in their own behalf, as against each other, in all controversies between them;
(2) Either spouse is a competent witness and may be compelled to testify against the other in any criminal prosecution of either husband or wife for a criminal act against any child, for contributing to the neglect or delinquency of a child, or desertion or nonsupport of children under the age of sixteen (16) years, or abandonment of children.
Additionally, Miss.Code Ann. § 13-1-6, governing competency of husband and wife as witnesses provides:
Husbands and wives may be introduced by each other as witnesses in all cases, civil or criminal, and shall be competent witnesses in their own behalf, as against each other, in all controversies between them. A criminal prosecution of either husband or wife for contributing to the neglect or delinquency of a child or desertion or nonsupport of children under the age of sixteen (16) years or abandonment of children shall be deemed controversies between husband and wife for the purpose of this section. But in all other instances where either of them is a party litigant the other shall not be competent as a witness and shall not be required to answer interrogatories or to make discovery of any matters involved in any such other instances without the consent of both.
It is certain that the chancellor understood the clear meaning of Rule 601 as well as Miss.Code Ann. § 13-1-5 (Supp.1992). An examination of the chancellor’s opinion is revealing indeed. The chancellor stated in his ruling:
I recognize what the rule says as to competency, 601, and it appears to be very clear on its face. At the same time, I’m inclined to be or make an effort to be practical because I think the law is intended to be practical. While rules of law are made frequently without contemplation of all the circumstances that may arise subsequent to the promulgation of that rule, and I won’t cite instances of that but I’m sure all of you can recognize instances of that kind of thing, including recent instances where rules have been promulgated by the Supreme Court or the trial courts, and circumstances pretty soon arose that were obviously not contemplated when the rules was promulgated.
I believe it would be indeed an anomaly and an impractical thing for the rule on competency of witnesses to state blankly and apply in every circumstance that a wife may not be a witness against her husband with respect to things that occurred and transpired prior to the time they became husband and wife. I just simply cannot believe that’s the intent of the rule despite the language of the rule, (emphasis added).
It would be the position of this Court that Mary Beth Coker Thomson is subject *480 to rules of relevancy and all of that sort of thing, but to respond with respect to events.
Was the pleading filed before this Court frivolous? The three Phelps Dunbar attorneys argue that the pleading was not frivolous because the trial court expressly recognized that his ruling was not consistent with the clear language of the rule. I agree with that analysis. Both Rule 601 and §. 13-1-5 are expressly clear on this issue of competency and privilege.
A review of the rule and the statute reveals no ambiguity in the wording of either. There can be but one conclusion; a wife cannot be compelled to be a witness against her husband unless her testimony falls into one of the exceptions. The factual situation in the case at bar does not qualify as an exception. Justice McRae attempts to distinguish this factual situation because the Thomson’s were only married after the civil and criminal incidents occurred. Yet, in Simpson v. State, 497 So.2d 424 (Miss.1986), Simpson was accused of murder, and shortly after the shooting, married Katie James, the only eye witness to the shooting. This Court, in reversing on impermissible prose-cutorial comment, made no distinction between acts of the defendant which had occurred prior to marriage and those which had occurred during the marriage. The Simpson Court did not hold that Simpson’s wife was competent to testify to matters which occurred before their marriage. Returning to the case at bar, as in Simpson, Mary Beth Thomson was an eyewitness to certain factual allegations which occurred prior to her marriage to Thomson. Because she was Thomson’s wife, Mary Beth could not be required to testify against Thomson, when he claimed privilege.
Equally important regarding the question of whether or not the petition involved issues that were frivolous is the contention of the Phelps Dunbar attorneys that Special Circuit Judge, Walter O’Barr, in one of the civil proceedings filed against Thomson in the Circuit Court of Forrest County, when presented with this same competency issue of spousal testimony, found that Mary Beth Thomson was incompetent as a witness in a civil proceeding in which her husband was a defendant. Judge O’Barr properly following Rule 601 and § 13-1-5 stated:
Mary Beth.Coker Thomson may not be deposed in this matter, may not be required to participate in discovery, and may not be called as a witness in this matter unless both she and her husband agree.
Judge O’Barr then granted a motion for a protective order of the same kind sought by Thomson in this ease from Chancellor Dale.
It is from the prior pleadings filed in the circuit court proceeding before Judge O’Barr, that the Phelps Dunbar attorneys maintain that Reeves extracted the incorrect language which had been inserted into paragraph three of the petition for relief. Reeves had received word of the chancellor’s denial of their requested relief from Gibbes at 11:50 a.m. on March 5th. Reeves then had to prepare his pleadings and drive from the Phelps Dunbar offices on Lakeland Drive in Flowood, Rankin County, Mississippi to file his pleadings with this Court by 1:00 p.m. In Reeve’s haste to meet the 1:00 p.m. filing deadline in this Court, utilizing language from a prior draft of a pleading concerning Thomson’s planned deposition in the circuit court proceedings filed and heard before Judge O’Barr, Reeves stated in paragraph three of the petition that Mary Beth Thomson was found in contempt and jailed. This statement, although in fact not true, was certainly entered in haste by mistake as the three attorneys claimed in writing and during the responses to questions by this Court at the show cause hearing. An examination of paragraph 4(e) in the petition clearly reveals the true concerns of the three attorneys. Paragraph 4(e) states:
Rather than testify against her husband, upon the advice of counsel, petitioner will assert her spousal privilege and lack of competency to be a witness when her deposition begins at approximately 1:00 p.m. today. Relying on the advice of counsel, petitioner will continue to assert her privilege even after the trial court orders her to answer certain questions. After continuing to refuse, the Court may hold petitioner in contempt, and order that she be arrested and placed in the custody of the Marion *481 County Sheriffs Department, (emphasis added).
The inconsistency between the two paragraphs clearly shows no deliberate attempt to mislead this Court, but rather a simple, albeit negligent, mistake in drafting the language of the petition.
Frank Trapp, as supervising attorney of Gibbes and Reeves, on behalf of all three attorneys admitted the mistake, explained it satisfactorily and profusely apologized to this Court both by letter within one working day of his discovery of the mistake, and in person at the hearing conducted by a panel of this Court. At the hearing Trapp stated:
We made a mistake. We made an honest mistake, but it is a mistake, nevertheless ...
... [T]he error is there. I take responsibility for it ...
... [I]t is a false fact, but it was not done intentionally ...
... [W]e made an error because we left something in there that shouldn’t have been in there.
Frank Trapp was in chancery court in Mendenhall, Mississippi involved in other litigation on March 5th and was privy only to a single phone call from Gibbes concerning the chancellor’s denial of Thomson’s motions. Trapp, as supervising attorney simply explained to this Court and accepted complete responsibility for what was irrefutably a simple mistake by Reeves in filing inconsistent language in two separate paragraphs within the pleadings. At this Court’s hearing Trapp exhibited the qualities of a gentleman in his willingness to assume responsibility for the actions of two young attorneys. More importantly, he reflected honesty, integrity and genuine character becoming to a member of the bar and officer of the Court. This writer would have expected no less from any lead attorney facing this same situation before the Court.
Carlton Reeves, at the Court’s show cause hearing, also explained the drafting error he made in paragraph three of the petition. Reeves stated:
... and in our discussions about what could possibly happen, we left in the quote in Paragraph 3 that she was held in contempt and she was ordered to jail. In Paragraph 4, I believe, of that same petition, we note that — I think it is Paragraph 4.E., we talk about what could possibly happen prior to the one o’clock deposition. There are inconsistencies there and I take credit for those inconsistencies because Mr. Trapp was in Mendenhall, Mrs. Gibbes was in Marion County, and I was in Jackson prepared to do whatever we had to do to protect Mr. Thomson’s rights.
And what about Laura Gibbes? Other Court members believe that she was not truthful, engaged in repugnant gamesmanship, and filed for relief before this Court on a frivolous issue which amounted to posturing between lawyers. An examination of the record on these findings clearly shows that the facts do not support such a position. I contend that the facts support Gibbes.
The transcript of the hearing before Chancellor Dale on the morning of March 5, 1991 reveals that in response to Eric Lowery’s question as to whether or not at the conclusion of the hearing he could expect to have lawyers in Jackson standing by to rush over to the Supreme Court and get another writ, we find the following:
Ms. Gibbes: We are prepared to protect the rights of my client.
Mr. Lowery: So the answer I can assume is correct, yes, (emphasis added). If so Judge, I am certainly against her getting any order signed whatsoever. I’m tired of being lead piped.
The Court: I will follow my usual procedure that the order will be prepared by the prevailing counsel on the prevailing side and I directed them to prepare an appropriate order. When they do so, I will enter it. It better not be Frank Trapp [additional counsel for Thomson] that appears up there at the Supreme Court looking for an emergency today who couldn’t be here and can’t take the place and the things that he signs and so forth, (emphasis added)
At this Court’s hearing, Gibbes, referring to events at the conclusion of the hearing on the morning of March 5th, stated:
*482 Your Honor, I think when you look at the complete record in this case, the motion filed in this Court indicates that Mr. Lowery immediately following that hearing stated to me that he was going to give me a ten-minute head start to go and file my writ with the Supreme Court, (emphasis added).
The opinions of other members of this Court claim that Gibbes’ response to Lowery that she would protect her client’s rights was untruthful or somehow misleading to Lowery and the trial court. The record however, does not support that either Lowery or Chancellor Dale were mislead by this response of Gibbes. Admittedly, a better practice would have been for Gibbes in response to Lowery’s question, to have simply replied, “yes.” However, Gibbe’s response clearly does not reflect untruthfulness on her part as the majority maintains. In plain English, both Lowery and the chancellor, by their responses, admit that they knew that relief was going to be immediately sought by the Phelps Dunbar attorneys before this Court. As the chancellor stated, “It better not be Frank Trapp ...” And finally, as if there ever was any doubt that the attorneys would file for relief before this Court, we note Lowery’s offer to give Gibbes a ten-minute head start to go and file the writ with the Court, and if the Court did not rule prior to 1:00 p.m., that the deposition would begin. This colloquy eliminates any question of a misunderstanding by Lowery as to what Gib-bes intended to do in order to protect her client’s rights.
Mary Beth Thomson’s deposition commenced at 1:00 p.m., as scheduled. When the deposition was suspended at 1:17 p.m., the following statements were made by plaintiffs counsel:
By Mr. Phelps: We’re going to conclude the deposition at this time, reserve the right to reconvene the deposition after ruling by the Supreme Court on the Petition that we have been advised is going to be filed by counsel for John Thomson.
By Mr. Lowery: At which time, then, Tom, we’ll — based on the ruling of the Supreme Court, if they say continue, then we’ll come back to the Court....
Considering the above mentioned statements, how could some other Court members possibly claim that Gibbes misled counsel opposite and never gave notice of intent to file a petition before this Court? It is clear that the two attorneys, Lowery and Phelps, unequivocally knew a petition with this Court would be filed and were awaiting a decision.
Justice Lee attempts to totally rewrite Miss.Sup.Ct.R. 8, which only requires “reasonable notice” be given to all parties. Notice was given orally in “plain English” and understood by all involved well in advance of the filing of the petition with this Court. However, notice by mail was clearly furnished to all participants by Reeves when the petition was filed. The petition was denied at once by a three judge panel of this Court without requiring a response of Lowery as allowed by the rules. The three judge panel of this Court, based upon the “facts” within the petition, saw no need whatsoever to require a response from Lowery. Notice was given to all parties and counsel by the Supreme Court Clerk at 4:00 p.m. on March 5, 1991.
The petition was filed pursuant to Rules 8 and 21 of the Mississippi Supreme Court Rules. Rule 8, providing the procedure for seeking a stay in this Court, requires that “Reasonable notice of the motion [for stay] be given to all parties.” Miss.Sup.Ct.R. 8(c). Rule 21(a) provides:
Application for a writ of mandamus or prohibition directed to a judge or judges shall be made by filing a petition with the clerk of this Court with proof of service on the judge or judges and on all parties to the action in the trial court.
Miss.Sup.Ct.R. 21.
Reeves gave notice by mail as to the filing of the petition upon the trial court and counsel opposite on March 5, 1991. My research has failed to produce a single case in which this Court has addressed the timeliness of service of pleadings under Rule 8 or Rule 21. Reeves sufficiently provided reasonable notice under the unusual facts of this case.
*483 However, after Justice Lee’s pronouncement, the Bar should forever be forewarned that notice in person, telephonic notice, or a facsimile (“fax”), might henceforth be required by some members of this Court in order to adequately satisfy the “reasonable notice” requirements of Rule 8 and failure to comply might result in the imposition of sanctions against the attorney violating this new pronouncement of the majority.
The previous paragraph raises the remaining question of what prejudice and costs, if any, did Lowery suffer? The answer is a resounding “none whatsoever.” On March 5, 1991, a three judge panel of this Court, consisting of Presiding Justice Dan Lee, Justice Chuck McRae, and the author of this opinion, had already routinely addressed other various motions when informed by a staff attorney that a forthcoming petition for relief would be filed shortly after a lunch break, but before 1:00 p.m. because the complained about deposition was scheduled at the same time. The deposition of Mary Beth Thomson was suspended at 1:17 p.m. Reeves did not file his petition before this Court until 1:31 p.m. Justice Lee makes much ado about this fact yet Reeves, in response to this Court’s questions at the Court’s hearing, stated that he did not know that the deposition had been suspended when he filed for relief before this Court. This is unrefuted in the record before this Court. Considering Reeves’ time constraints under these circumstances, his statement is both reasonable and believable. More importantly, this Court denied Thomson’s requested relief, based on the “facts” within the petition, without requiring a response by Lowery. This procedure is exactly what the rule allows the Court to do if it so chooses. There was absolutely no need for Lowery to file for sanctions.
On Monday, March 5, 1991, Frank Trapp promptly sent a letter of apology to this Court, when he first learned of the mistake in paragraph three of the petition filed by Reeves. Trapp had also attempted to talk with Lowery and apologize, but Lowery refused to talk with Trapp. This fact was supported by the telephone records of the Phelps Dunbar law firm which were introduced at this Court’s show cause hearing.
Lowery argued that in spite of the acknowledgment to this Court of the mistake in paragraph three of the pleadings by Trapp, he nevertheless had a responsibility to correct the record and did so by filing a motion to correct and for sanctions. It is clear that Lowery suffered no prejudice, attorneys fees or cost in this matter.
In conclusion, both Lowery, Phelps, and the Phelps Dunbar attorneys agree that paragraph three of the petition contained a misstatement of the procedural posture of the case and that the record should be corrected to eliminate that misstatement. The deposition was already concluded when the panel of this Court considered the petition, a quick status check with the lower court by a staff attorney revealed that Mary Beth Thomson was not held in contempt nor jailed by the chancellor. This fact was made known to the three judge panel. The order of the three judge panel of this Court denying relief to Thomson stated that the request was denied based upon the alleged “facts” of the petition. This Court should grant Lowery’s motion to correct.
Regarding the imposition of sanctions under our rules, some of this Court’s members have erroneously suggested that the petition’s requested relief was frivolous, that Thomson’s attorneys acted unreasonably in serving notice of the petition by mail rather than personal service, telephonic transmission, or by facsimile, “fax”; used improper conduct and repugnant gamesmanship; and were guilty of posturing between lawyers. I disagree and believe that a dangerous precedent would be set by this Court if such a position had actually become a majority opinion.
Other writers chastise the three Phelps Dunbar attorneys for the negligent misrepresentation of material facts contained in paragraph three of the petition and completely ignore the accurate, true concerns of the Phelps Dunbar attorneys as stated in paragraph 4(e) of the petition. May I again suggest that if this Court were to adopt such imposing standards under the facts of this case we would be setting a very dangerous precedent. Mistakes such as this can and do occur in practically every zealously pursued *484 trial advocacy proceeding. Case in point being the oral argument before this Court in the case sub judice. What do those Court members with opposite views propose this Court do about the misstatement of a material fact by Lowery during the show cause hearing before this Court? Lowery told this Court that the deposition of Mary Beth Thomson was terminated: ... ’’This Court could not have stopped the deposition which had already taken place. We were on the road back to Hattiesburg. It was over ... ” In fact, as pointed out by Trapp, the hearing was only suspended at 1:17 p.m., not terminated. This was certainly not a deliberate falsehood by Lowery, but rather a simple mistake. Do we sanction Lowery? How absurd, of course not.
Additionally, Trapp pointed to the factual error of Lowery who told this court’s three judge panel that, “at lunchtime on March 5th, 1993, Tom Royals said there was going to be a pleading filed with the Supreme Court.” “But, if you look at his motion for sanctions, he said Mr. Royals didn’t know about it and had not been told to anticipate it, or words to that effect, if you look at it.” Trapp, was not advocating' sanctions upon Lowery but rather was simply using these clearly material misstatements of facts by Lowery as an example to show what attorneys sometimes say or do during the “heat of advocacy.” As Trapp so ably put it, “It doesn’t excuse them, but it is just part of what goes on with the human element we bring to it.” The old adage “what is good for the goose, is good for the gander” could very easily have applied in this case. Yet, it is noted with interest that the other members of this Court with opposing views did not propose to apply their pronouncements evenhandedly within this case.
Therein we find the danger in imposing such a strict, over-interpretation of our rules under the facts of this case. Such an opinion would open the flood gates to a barrage of requests for sanctions due to some supposed egregious conduct or statements made by opposing attorneys during the heat of zealous trial advocacy.
No grounds for sanctions against these attorneys exist under Rule 36 or Rule 38, as the petition is not an appeal. Lowery only cited these two rules which are directed to matters which are before this Court on direct appeal of final orders of the trial court or on interlocutory appeal by permission of this Court. Lowery failed to cite other authority for the imposition of sanctions.
However, the Thomson attorneys asked for a hearing under Rule 2(b) and this Court complied with that request. The only possible means of considering sanctions at all is through Rule 46(d), which allows sanctions, sua sponte. What rules of the Court have been violated by these attorneys? None. The only other aspect of the rule that the other Court members can claim the attorneys have violated is “conduct unbecoming a member of the bar.” This is where they stretch their opinions dramatically. These other opinions escape the confines of “conduct unbecoming” under Rule 46(d) and promptly scatters findings of violations of Rule 8(c), Rule 36 and Rule 38, none of which are supported by this record.
The trial court ruled on the competency issue in a manner without a doubt completely contrary to the plain language of M.R.E. 601(A), and to Miss.Code Ann. § 13-1-5 (Supp.1992), and to another trial court’s ruling in the same county, involving the same parties, same attorneys, and the same issue of privilege and competency in a similar civil case in which Thomson was also a defendant. Other Court members conveniently ignore these facts. In fact, Justice Lee admits that he avoids addressing this issue, the very underlying cause of the situation we now address. We do a disservice to the Bar by failing to address the root cause of this conflict because a similar erroneous ruling clearly is capable of being repeated by our trial courts unless guidance is furnished on this issue by this Court. This is especially true when both Rule 601 and § 13-1-5 are so abundantly definite on this issue.
PRATHER, P.J., and JAMES L. ROBERTS, Jr., J., join this opinion.