First Baptist Church of Oxford *v.* W. M. Hendricks
*et al.*

[65 South. 244.]

1. Principal and Surety. *Liability of surety. Breach by principal. Action against surety. Evidence.*

Where a written contract was made providing that the principal should personally superintend the construction of a building at a *per diem* rate, with authority to contract for labor and materials, subject to the approval of the building committee and to push the work to completion, without employing any assistant, under which payment for wages were to be made to him weekly, and the principal gave a bond conditioned to well and truly perform and complete such contract and to indemnify the committee against the expenditure of more than $6900, and after the principal had superintended a large part of the work and purchased most of the material, he left and placed an employee in charge, who continued the work under his instructions by letter; and to this arrangement the building committee though knowing of it, did not consent, supposing the absence of the principal was temporary and continued to make its checks for wages payable to the principal and the building, when completed, exceeded the fixed cost, in such case the contract was breached and the sureties were liable on their bond.

2. Principal and Surety. *Action against surety. Evidence.*

In such case the exclusion of evidence as to expenditures while the principal was absent was error.

Appeal from the circuit court of Yalabusha county.
Hon. N. A. Taylor, Judge.

Suit by the First Baptist Church of Oxford, Mississippi, against W. M. Hendricks and others. From a judgment for defendant, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*Creekmore & Stone,* for appellant.

*R. F. Kimmons* and *J. C. McGowen,* for appellees.

Reed, J., delivered the opinion of the court.

J. F. Leonard entered into a contract with the First Baptist Church of Oxford, Mississippi, to superintend the building of a Sunday school annex and making certain repairs and improvements on the church edifice. He was given authority to make contracts for labor and materials, subject to the approval of the building committee. He agreed to give his personal services as manager and superintendent and to push the work to a speedy conclusion, and for his services he was to be paid a stipulated amount per day. The contract, in addition to setting forth its terms, contains a statement of the negotiations between Mr. Leonard and the church leading up to the making of the agreement. Omitting the formal opening and closing paragraphs of the contract, we give it in full, as follows:

"Said Leonard having heretofore submitted to said committee a bid for the construction of a Sunday school annex and the making of certain repairs and improvements on the old church building, proposing to carry out the plans and specifications of H. J. Harker, architect, with certain enumerated exceptions therein specified, for the aggregate sum of six thousand, nine hundred dollars (said bid not including the heating plant), which bid, signed by the said Leonard, is hereto attached; and the said Leonard having further proposed as an alternate proposition: If the committee would employ him as manager and superintendent, allowing him to purchase materials and contract for the labor, allowing him five dollars and fifty cents for each working day, as compensation for his service as such manager and superintendent, that he, the said Leonard, could save money for the committee, even on his own bid, in furtherance of which last proposition the said Leonard now agrees to warrant and guarantee to said committee that the entire cost of said construction, improvements, and repairs (as above described),

together with all incidental expenses and every other item of monetary expenditure, shall not exceed the aggregate sum of six thousand, nine hundred dollars; the said Leonard agreeing that, if said total cost should exceed said sum of six thousand, nine hundred dollars, then and in that event he will pay the excess necessary to complete the work; the said Leonard agreeing further to execute and furnish a good and satisfactory bond acceptable to said committee, in the penalty of one thousand, eight hundred dollars, conditioned on the faithful and competent performance of this contract of management and superintendence, and on making said committee whole against the expenditure of more than said six thousand, nine hundred dollars, in the completion of the work specified:

"Now, therefore, said building committee having considered both said propositions fully, does here and now accept the last-named proposition on the terms mentioned above, and agrees to pay the said Leonard the sum of five dollars and fifty cents per day for each working day from this date for his services as such manager and superintendent, until the work is completed, giving the said Leonard authority to make contracts for labor and materials, subject only to the approval of the building committee. The said Leonard agrees to begin the work at once and to push same to a speedy conclusion, devoting his entire time and attention solely to this work, until finished, and completing the same as quickly as is consistent with good workmanship and safe construction. No other person is to be employed by the said Leonard as assistant foreman or superintendent, but the said Leonard is to do all such work himself.

"Said committee agrees to pay the necessary expenses of the said Leonard when away from Oxford for the sole purpose of getting labor or materials for this work, such as car fare, hotel bills, telegraph and tele-

phone bills, necessarily incidental to the work; said incidental expenses estimated by the said Leonard not to exceed the sum of thirty dollars.

"The committee reserves the right to make any changes it may see fit in the plans and specifications of the said H. J. Harker, which are hereto attached and made a part of this contract.

".Payments for wages are to be made once each week; all payments for any purpose are to be made by check."

Pursuant to the provision in the contract that he would furnish a bond in the sum of one thousand, eight hundred dollars, conditioned on the faithful and competent performance of the contract, of management and superintendence, and on the making the building committee of the church whole against the expenditure of more than six thousand, nine hundred dollars in the completion of the work specified, Mr. Leonard, as principal, executed a bond, with appellees herein as sureties, in the sum named and payable to the building committee. We quote in full the condition in the bond:

"The condition of the above bond is this: Whereas, the said Leonard 'has entered into a contract in writing with the said building committee to superintend the construction of 'a Sunday school annex, and to make certain repairs on the present church building, to purchase all material, and employ and procure all labor for the same, copy of which contract is hereto attached: Now, if the said Leonard shall well and truly perform, carry out complete, his said contract according to its terms, and indemnify said church against the expenditure of more than the sum of six thousand, nine hundred dollars in the accomplishment of the work provided for in said contract and the plans and specifications therein mentioned, then this obligation to be void; otherwise, to remain in full force and effect."

Mr. Leonard thereafter, in accordance with the contract, began the work. He continued as superintendent

in personal and actual charge of the construction until a large part thereof had been done. He then left Oxford, and placed C. C. Gunter, who had been in his employ and assisting in the building, in charge of the work, which was thereafter continued under directions from Leonard, but under the immediate supervision of Gunter. Gunter received instructions and orders from day to day by letter from Leonard. Members of the building committee knew of Leonard's absence from the work, and knew that Mr. Gunter had immediate supervision thereof; but appellants did not consent to his absence, which was supposed to be temporary, nor consent to his failure to give his personal supervision.

Nearly all of the material for the building had been purchased by Leonard before he left Oxford. Mr. Gunter purchased less than one hundred dollars worth of material. A considerable sum was expended after Leonard left in the payment of wages to men who had been previously employed by him at fixed amounts for their services. Appellant continued to give checks for the weekly pay roll after Leonard left Oxford, and these checks were made payable to him. When the building was finally completed, it was ascertained that the total cost amounted to eight thousand, eight hundred and twenty-five dollars and ninety-eight cents, or one thousand, nine hundred and twenty-five dollars and ninety-eight cents more than the amount of the cost guaranteed by Leonard in his contract. Suit was brought on the bond for the full penalty thereof.

During the trial, the court excluded the testimony of all items of expenditures after Leonard ceased to be physically present superintending the work. When all of appellant's testimony had been introduced, the court excluded it, and directed a verdict for appellees, from which action this appeal is prosecuted.

It is contended by appellees that they are relieved of liability in this case, because their principal, Leonard,

did not give his immediate personal supervision of the work, as provided in the contract. They claim that there was a breach of the stipulation in the contract which reads, "No other person is to be employed by the said Leonard as assistant foreman or superintendent, but the said Leonard is to do all such work himself;" that there was such departure from the terms of the contract as to release the conditions of the bond. This contention was sustained by the trial court, who evidently interpreted the provision in the contract just quoted as being for the benefit of the sureties, and that a failure to comply therewith relieved them in full.

We cannot agree with this construction. The bond was given to protect the church against any loss by reason of the failure of the principal, Mr. Leonard, in performing and completing his contract. It was given to guarantee his accomplishing the work as therein provided. He obligated himself to personally supervise, give his entire time, and complete the work as quickly as was consistent with good workmanship and safe construction, and make whole the committee for expenditures exceeding six thousand, nine hundred dollars in completing the work. He failed to complete the church for the sum named, and failed to "well and truly perform, carry out complete," his said contract, for he continued in charge of the work until its completion, though he was not physically present during all of the time, and for a time was acting through an agent under his daily instruction. The church did not agree to Leonard's physical absence from the work, and did not thereupon make a new contract with him, whereby he was authorized to delegate the superintendency to another person. All of the work was done under the same contract. The church did not breach the contract, but Leonard, the principal, did, and the sureties on his bond should be held liable for their principal's default.

The trial court erred in excluding the testimony of the expenditures while Mr. Leonard was absent from Ox-

ford and not physically present superintending the work, and also in giving the peremptory instruction for appellees.

*Reversed and remanded.*