# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2008-CA-01931-SCT

*FIDELITY & GUARANTY INSURANCE*
*COMPANY*

*v.*

*JOSEPH L. BLOUNT, IN THE OFFICIAL*
*CAPACITY AS COMMISSIONER OF THE*
*MISSISSIPPI STATE TAX COMMISSION*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/21/2008 |
| TRIAL JUDGE: | HON. PATRICIA D. WISE |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | LISA ANDERSON REPPETO |
| | MARK D. HERBERT |
| | KEVIN ALAN CROFT |
| ATTORNEYS FOR APPELLEE: | MISSISSIPPI DEPARTMENT OF REVENUE |
| | BY: JAMES L. POWELL |
| | KENITTA FRANKLIN TOOLE |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED - 03/24/2011 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

## CONSOLIDATED WITH

## NO. 2009-CA-01248-SCT

*ST. PAUL FIRE & MARINE INSURANCE*
*COMPANY, TRAVELERS CASUALTY AND*
*SURETY COMPANY OF AMERICA, FIDELITY &*
*GUARANTY INSURANCE COMPANY AND*
*UNITED STATES FIDELITY & GUARANTY*
*COMPANY*

*v.*

*ED MORGAN, CHAIRMAN, MISSISSIPPI STATE*
*TAX COMMISSION*

DATE OF JUDGMENT:                    07/07/2009
TRIAL JUDGE:                         HON. WILLIAM H. SINGLETARY
COURT FROM WHICH APPEALED:           HINDS COUNTY CHANCERY COURT
ATTORNEYS FOR APPELLANT:             LISA ANDERSON REPPETO
                                     MARK D. HERBERT
                                     KEVIN ALAN CROFT
ATTORNEYS FOR APPELLEE:              MISSISSIPPI DEPARTMENT OF REVENUE
                                     BY: JAMES L. POWELL
                                         KENITTA FRANKLIN TOOLE
NATURE OF THE CASE:                  STATE BOARDS AND AGENCIES
DISPOSITION:                         AFFIRMED - 03/24/2011
MOTION FOR REHEARING FILED:
MANDATE ISSUED:


**EN BANC.**

**PIERCE, JUSTICE, FOR THE COURT:**

¶1.     On a consolidated appeal, Fidelity and Guaranty Insurance Company ("F&G"), St.

Paul Fire and Marine Insurance Company ("St. Paul"), Travelers Casualty and Surety

Company of America ("Travelers") and the United States Fidelity and Guaranty Company

("USFG"), collectively referred to as "sureties,"  are challenging the constitutionality of

certain practices of the Mississippi State Tax Commission ("Tax Commission") as related

to certain contractor payment and performance bonds as required by law.

¶2.     On June 26, 2002, F&G, a surety company licensed and operating in Mississippi, filed

suit in the Chancery Court of Hinds County challenging the Tax Commission's right to

threaten to seize F&G's Mississippi assets within ten days if it did not pay the sum that the

Tax Commission claimed was owed by F&G's principal, Aaim Construction, Inc. ("Aaim")

for unpaid taxes, penalties and accrued interest. After discovery was completed, the Tax Commission moved for summary judgment; F&G filed a cross-motion for summary judgment. On October 21, 2008, the trial court denied F&G's motion and granted the Tax Commission's motion for summary judgment.

¶3. On February 13, 2009, St. Paul, Travelers, F&G, and USFG filed an action in the same court on similar facts and issues but with different sureties and bonded principals. The Tax Commission filed its motion to dismiss on March 17, 2009, and after briefing and oral arguments, the trial court again ruled in favor of the Tax Commission.

¶4. The trial court concluded that a surety is not a taxpayer as contemplated under Mississippi sales-tax law, is not entitled to notice prior to a tax assessment or audit, and is liable for the entire amount of unpaid taxes, including damages, penalties, and interest. A timely notice of appeal was filed, and upon joint motion of all parties, the above cases were consolidated for appeal.

**STATEMENT OF FACTS**

¶5. The appellants herein are all related surety companies authorized to do and doing business as sureties for construction companies in the state of Mississippi. Before a construction company may begin business, it must, by law, either pay the contractor's tax in advance or must execute and file with the Tax Commission a bond with a surety company authorized to do business in Mississippi. This is to ensure that all taxes owed to the State will be paid when due. With this requirement in place, the Tax Commission has a form tax rider that has been approved by the commissioner and is commonly used by sureties and principals alike when complying with this requirement.

3

¶6.     In addition to the bonding requirement, entities engaged in construction activities are required to pay contractor's tax in the amount of three and one-half percent of the total contract price or compensation received.[1]  Failure to timely pay a contractor's tax when due can result in an assessment and penalties ranging from ten percent to fifty percent of the total deficiency or delinquency or interest on the deficiency at the rate of one percent per month or both.[2]

¶7.      These riders expressly guarantee the payment of "all taxes, damages, interest and penalties, which may accrue to the State of Mississippi."[3]  Seven riders, in total, are the subject of this dispute.

¶8.     Mississippi statutory law authorizes the Tax Commission to adopt rules and regulations necessary to implement the duties assigned to it by law.  Pursuant to this grant of authority, the Tax Commission duly conducted multiple sales-tax audits on the bonded principals whose sureties are involved in this appeal.  These audits resulted in an assessment of unpaid taxes, plus damages and penalties and interest commensurate with the taxes owed, which the sureties variously contest or seek to avoid paying.

*Aaim Bonds*

¶9.     Aaim applied for and was given a state tax identification number in 1988.  Aaim  was bonded by F&G to ensure the payment of taxes.  In 1991, Aaim was audited by the Tax Commission with no additional sales taxes assessed.  In 1994, Aaim was audited again and

---

[1]Miss. Code Ann. § 27-65-21 (Rev. 2010).

[2]Miss. Code Ann. § 27-65-39 (Rev. 2010).

[3]www.dor.ms.gov/docs/sales_72440.pdr (Last visited 3/23/2011).

4

found to be in arrears in the amount of $16,205.23 in unpaid taxes and $2,877.70 in penalties and interest. The Tax Commission audited Aaim a third time in 1998 and assessed additional taxes due and interest and penalties at fifteen percent, totaling $81, 654.[4] In 2001, Aaim was audited a fourth time. The Tax Commission assessed additional taxes of $116, 479, interest of $20,770, and penalties of $29,120, or twenty-five percent of the unpaid taxes. The time period between the 1998 audit and the 2001 audit is contested.

¶10.    On June 21, 2001, Aaim requested a hearing by the Board of Review. The hearing was granted, and F&G was given no notice of Aaim's default or the hearing. At the hearing, Aaim informed the Tax Commission that it was financially unable to pay the money owed. In the minutes of the hearing, the Tax Commission acknowledged that it was aware of F&G's suretyship with Aaim and that it intended to collect from F&G if the tax could not be collected from the taxpayer. The Commission further acknowledged that F&G's address was printed on the face of the bond, but made no attempt to contact F&G or give it notice of the hearing held on August 2, 2001, with Aaim. F&G first received notice of the assessment by a demand letter on November 8, 2001.

¶11.    The letter demanded payment of $131,880 owed by Aaim, which included unpaid taxes, penalties, and interest. The letter informed F&G that Aaim, the taxpayer, had been given due process of law regarding the audits and informed F&G that a tax warrant and lien would be filed if it did not pay within ten days. The letter dated November 8, 2001, came

---

[4]Pursuant to Mississippi Code Section 27-65-39, the Tax Commission may add a penalty of ten percent to the total deficiency after a first offense, fifteen percent for the second offense, twenty-five percent for the third offense, and fifty percent for any subsequent offense. *See* Miss. Code Ann. § 27-65-39.

some three months after the hearing and some seven years after the Tax Commission had become aware that there was a problem with Aaim. On December 18, 2001, F&G paid the sum under protest and on June 26, 2006, filed suit in the Chancery Court of Hinds County.

*Pryor and Frazier Bonds*

¶12. On or about May 31, 2002, St. Paul provided a performance and payment bond for Pryor and Frazier Construction, Inc., in regard to a project at the Jamie Whitten Delta State Research Center. Attached to the bond was the Tax Commission's form tax rider dated June 5, 2002. Seven years later, and without any prior notice, on January 8, 2009, the Tax Commission sent St. Paul a demand letter demanding payment within ten days of $772,022, including $368,450 in unpaid taxes, $184,226 in penalties, and $219,346 in interest, all owed to the state by Pryor and Frazier. St. Paul's failure to pay risked seizure of its assets in Mississippi. Sometime between the date of the assessments of the unpaid taxes and the demand letter, Pryor and Frazier ceased doing business.

*Frazier and Williams Bonds*

¶13. Travelers issued performance bonds to Frazier and Williams for various projects in Tupelo, Mississippi. In conjunction with these bonds, Travelers issued the Tax Commission's form tax rider as required by statute. On or about October 27, 2008, the Tax Commission forwarded to Travelers a demand that it pay within ten days $200,921 in taxes, penalties, and interest owed the State of Mississippi. Travelers' failure to pay risked the seizure of its assets located in Mississippi. Then, on or about December 29, 2008, the Tax Commission forwarded a decreased "corrected claim" to Travelers and demanded that it pay

6

$87,656.60, consisting of $67,160.60 in unpaid taxes, $2,305 in penalties, and $18,191 in interest, within ten days or risk seizure of its assets in the state.

¶14.   Both these claims accrued prior to Travelers receiving any notice of its principal's delinquency and its liability pursuant to the tax rider.  Sometime between the date of the original assessment and the first demand letter, Frazier and Williams ceased doing business.

*Cobb Land Development Bonds*

¶15.   In October 2000, F&G issued a performance bond and form tax rider provided by the Tax Commission for the Tunica Airport Site Preparation for its principal Cobb Land Development (Cobb).  In February 2001, F&G issued a performance bond and tax rider for Cobb for the Jennings Biozone Hazard Mitigation Project.  In addition to issuing these two bonds, the Tax Commission claims that F&G also issued a tax rider for Cobb in July 2000 for the New Noxubee High School Site Development Package; however, F&G has no record that such bond or rider was ever issued, and the Tax Commission has not offered an executed copy of the rider thus far.[5]

¶16.   In July 2004, the Tax Commission sent a demand letter requiring F&G, within ten days, to pay $398,074, with taxes of $328,071, interest of $37,195, and penalties of $32,808 for the Noxubee County High School, Jennings Biozone Mitigation Project, and the Tunica Airport Project.  F&G's failure to pay within ten days risked seizure of its assets in the state of Mississippi.  As with the other bonds and tax riders issued, this was the first notice that F&G had of its liability on the bonds.  F&G requested a hearing to contest these assessments,

---

[5]Sureties have no obligation to pay on bonds that were never executed.  If F&G contests the execution of this bond, that is certainly an issue for a trial court to settle between these parties.  It is not, however, an issue that was raised in this appeal.

7

but the Tax Commission refused on the basis that F&G was not entitled to any notice or copies of any audits or hearings in regard to its principals. By agreement of the parties, collection efforts on these bonds were held in abeyance until the trial court reached a decision in the original Aaim litigation. In March 2006, the Tax Commission adjusted its original assessment against the Cobb bonds from $398,074 downward to $273,380 – a reduction of $124,694 from its original assessment.

¶17. On November 28, 2008, after the trial court had reached a decision, the Tax Commission issued another, "corrected" demand letter to F&G demanding, within ten days, the payment of $647,407 – $374,027 more than its original assessment. Again, F&G's failure to pay would have risked seizure of its assets and property in Mississippi. Then, only five days later, on December 2, 2008, The Tax Commission issued a third, "corrected," claim to F&G for $383,838 – $263,569 less than its November 28, 2008, demand. Two days later on December 2, 2008, the Tax Commission issued a fourth, "corrected," claim in the amount of $270,277 – $113,561 less than its December 2, 2008, assessment. F&G paid the sum of $270,277 under protest. Sometime between the date of the first assessment and the July 29, 2004, demand on F&G, Cobb ceased doing business.

*Cobb Land Development Bonds (II)*

¶18. Around October 2000, F&G issued a tax rider for the Tunica Airport site-preparation contract and related performance bond for Cobb. Then, in February 2001, F&G issued another tax rider on behalf of Cobb for the Jennings Biozone Hazard Mitigation Project. At some point after these bonds were issued, the Tax Commission completed an initial audit on Cobb and its bonded projects. After this initial assessment, the Tax Commission conducted

8

another separate and independent assessment on Cobb for unpaid contractor's taxes and the related penalties and interest that accrued therewith.

¶19.   In January 2009, more than eight years after the original bond was issued, the Tax Commission made a demand upon F&G for $4,451, with $2,881 in taxes, $1,282 in interest, and $288 in penalties.  The demand letter gave F&G ten days to pay in full the demanded sum related to the Jennings Biozone Hazard Mitigation project or face seizure of its assets in the State.

¶20.   F&G demanded a hearing to contest the assessment, but the Tax Commission refused to grant the hearing, stating that F&G was not entitled to any notice of the delinquency of any taxes or copies of any audits.

*Howell's Nursery & Landscape Bonds*

¶21.   On more than one occasion, F&G issued bonds and accompanying tax riders for various projects undertaken by its principal, Howell's Nursery & Landscape, Inc. (Howell's Nursery).  In December 2006, the Tax Commission made a demand upon F&G with regard to these bonds for $43,109.05, with $31,542.05 in unpaid taxes, $3,154.21 in penalties, and $8,412.79 in interest as assessed against Howell's Nursery.  As in the other demand letters, it gave F&G ten days to pay the amount in full or risk seizure of its assets in the state.  In response, F&G again demanded a hearing before the Review Board and requested a copy of the auditor's complete file of the assessment so it could investigate the assessment independently.  The Tax Commission refused both the request for a hearing and the request for copies, saying that F&G was not a "taxpayer" in relation to the underlying liability and thus, was not entitled to hearing on the assessment.

9

¶22. Pursuant to an agreement between the parties involved, collection efforts on this matter were held in abeyance pending the outcome in the Aaim litigation. In the interim, in November 2008, the Tax Commission reassessed Cobb and submitted a "corrected" assessment, increasing the sum to $51,940.82 and informing F&G that failure to pay risked seizure of its assets in the state. In December 2008, F&G paid the full $51,940.82 under protest. Sometime between the date of the assessment against Howell's Nursery and the demand letter on F&G, Howell's Nursery ceased doing business.

*Avant Garde Bond*

¶23. In September 2000, USFG provided a performance bond and tax rider on behalf of Avant Garde Contractors, Inc. (Avant Garde) with regard to the construction of Catherine's Retail Store, Metro Center Mall, in Jackson, Mississippi. Approximately four years later, in August 2004, the Tax Commission forwarded a demand letter to USFG demanding payment in full, within ten days, of $8,201.82, consisting of $5,174.65 in unpaid taxes, $517.46 in penalties, and $2,509.71 in interest. Failure to pay risked seizure of USFG's assets in the state. Upon agreement of the parties, collection efforts were held in abeyance until a decision was reached in the Aaim litigation.

## Issues on Appeal

¶24. The parties agreed at trial that there were no issues of fact to be tried in this case. The sureties complain that: (1) the trial court erred in applying Mississippi contract law, (2) the trial court erred in finding that their constitutional right to substantive and procedural due process was not violated by the Tax Commission when it failed to give notice of the tax

10

audits at issue, and (3) the trial court erred in finding that the sureties lacked standing to dispute this lack of notice.

¶25.   In other words, the question to be answered is whether F&G and other sureties in similar situations  should have been given notice by the Tax Commission of their principals' defaults and tax audits and subsequent status resulting from such audits.  Additionally, we must determine whether, after such assessment takes place, a surety is liable for the total sum of the unpaid taxes, damages, penalties and interest assessed or merely the sum of unpaid taxes, since it is not the sureties' own default that resulted in penal assessments.

## STANDARD OF REVIEW

¶26.   This Court generally has accorded great deference to an administrative agency's construction of its own rules and regulations and the statutes under which it operates.[6]  When reviewing orders of a state agency, the trial court and this Court are limited by the arbitrary-and-capricious standard.[7]  An appeal of an agency decision should be to determine whether or not the order of the administrative agency "(1) was supported by substantial evidence, (2) was arbitrary or capricious, (3) was beyond the power of the administrative agency to make, or (4) violated some statutory or constitutional right of the complaining party."[8]

## ANALYSIS

---

[6]*Miss. State Tax Comm'n v. Mask*, 667 So. 2d 1313, 1314-1315 (Miss. 1995) (citations omitted).

[7]*Id. (citing **Miss. State Tax Comm'n v. Dyer Inv. Co., Inc.**, 507 So. 2d 1287, 1289 (Miss. 1987)).

[8]*Mask*, 667 So. 2d at 1315.

11

**I.    The trial court did not err in applying Mississippi contract law, thereby holding the sureties liable for the taxes, penalties, damages and interest which accrued to the State of Mississippi by virtue of the principals' defaults**.

¶27.    The sureties involved in this appeal contend that, as a matter of substantive and procedural due process, they are entitled to notice when their bonded principal is subject to an audit by the Tax Commission. Based on Mississippi contract law and the Mississippi Code, this contention is misplaced.

¶28.    Mississippi Code Section 27-65-21 requires that any person entering into any contract of $75,000 or more must, before beginning the performance of such contract, execute and file with the Tax Commission a good and valid bond in a surety company authorized to do business in the State of Mississippi with the condition that all taxes which may accrue to the state be paid when due; or pay the contractor's tax in advance.[9]

¶29.    It is well settled that issuance of a surety bond creates a contractual relationship between the surety and its principal. The contract of suretyship binds the surety absolutely and unconditionally.[10] Fundamental to the surety's obligation is that it rests on the principal's valid obligation to a creditor.[11] The surety's liability and obligation are the same as the principal's, and the surety is liable only if the principal is liable.[12] Equally fundamental is that the surety's agreement and the principal's agreement, being original and

---

[9]Miss. Code Ann. § 27-65-21 (Rev. 2010).

[10]*Bishop v. Currie*, 133 Miss. 517, 97 So. 886, 888 (1923).

[11]See *State for Use and Benefit of Brazeale v. Lewis*, 498 So. 2d 321, 324 (Miss. 1986).

[12]*Id.* at 324.

12

intertwined, are construed together.[13] While the principal and the surety are bound in contract, the contract is of a fiduciary nature as between the surety and principal.[14] Because of the fiduciary overtones of the surety's contract, a surety is regarded as in privity with the principal and generally is bound by the principal's actions.[15] The negative is also true: what the principal could not do, neither can the surety.[16] If the principal waives a known right, or by acts or representations is bound by estoppel, so is the surety.[17] However, the surety has every right to be protected by the principal.[18] Accordingly, the suretyship relationship, being contractual in nature, is governed generally by the familiar rules of contract law.[19]

¶30. Generally, the surety recovers through reimbursement from the principal.[20] The principal's default or breach of the underlying contract does not discharge the surety, but generally puts the surety's obligation in motion.[21] The surety becomes the creditor of the

---

[13]*See generally* **Hartford Accident & Indem. Co. v. Hewes**, 190 Miss. 225, 199 So. 93 (1940).

[14]**Morgan v. U.S. Fid. & Guar. Co.**, 222 So. 2d 820, 830 (Miss. 1969).

[15]**U.S. Fid. & Guar. Co. v. Parsons**, 122 So. 544, 549 (Miss. 1929).

[16]**Id.**

[17]**Id**.

[18]**Morgan**, 222 So. 2d at 830.

[19]**J. R. Watkins Co. v. Runnels**, 252 Miss. 87, 172 So. 2d 567 (1965) and **American Olean Tile Co. v. Morton**, 247 Miss. 886, 157 So. 2d 788 (1963); 8 *Mississippi Practice Series, Encyclopedia of Mississippi Law*, §69:3

[20] 8 Miss. Practice Series, *Encyclopedia of Miss. Law* §69:9.

[21]**First Baptist Church of Oxford v. Hendricks**, 65 So. 244, 245 (Miss. 1914).

principal after it has paid the principal's debt in full or in part, for all purposes.[22] Where a principal is known to be insolvent, after the debt has become due, the surety has an immediate right to sue to compel the principal to pay so the surety's position is not further harmed.[23]

¶31. Based on the long-standing contract law discussed above, it is clear that the sureties involved in this appeal willingly formed a contractual relationship with the principals they bonded. Accordingly, this appeal is nothing more than a contractual dispute.

¶32. It is well settled that courts are bound to enforce contract language as written and give it its plain and ordinary meaning if it is clear and unambiguous.[24] An insurance contract is ambiguous when the policy can be interpreted as having two or more reasonable meanings.[25] Each of the bonds in question contains the following language in riders:

> WHEREAS, under the provisions of Section 27-65-21, Mississippi Code of 1972, as amended, the said Principal is required to and has furnished the attached bond *guaranteeing payment of all taxes, damages, interest and penalties which may accrue to the State of Mississippi . . .* on account of entering into said contract.
>
> NOW THEREFORE, in addition to the obligations set forth in the attached bond, there is hereby imposed the additional obligation by this Rider that the *Contractor shall promptly make payment when due of all taxes, damages, interest and penalties which may accrue to the State of Mississippi* under Section 27-65-1 et seq., and Section 27-67-1 et seq., and Section 27-7-1 et seq., and Section 27-13-1 et seq., and Section 27-7-301 et seq., and Section 27-

---

[22] 8 Miss. Practice Series, *Encyclopedia of Miss. Law* §69:19.

[23] *Fid. & Deposit Co. of Maryland v. Deposit Guar. Bank & Trust*, 144 So. 700, 702 (Miss. 1932).

[24] *Miss. Farm Bureau Ins. Co. v. Britt*, 826 So. 2d 1261, 1266 (Miss. 2002).

[25] *Id.*

55-313, Mississippi Code of 1972, and amendments thereto, on account of the execution of the aforesaid contract.

The language "guaranteeing payment of all taxes, damages, interest and penalties which may accrue to the State of Mississippi" is clear and unambiguous and should be given its plain and ordinary meaning. Just as this Court has enforced clear and unambiguous bond contracts containing provisions for the payment of attorneys' fees, so should this Court enforce the plain and clear meaning of the bonding contracts and riders at issue.[26]

¶33. In *Stowell v. Clark*, a surety complained a subcontractor on a road project should not be able to enforce the plain language of the agreement, which guaranteed attorneys' fees incurred during the enforcement of the agreement, because that provision was not for the subcontractors' benefit.[27] We found that the bond was for the benefit of subcontractors and others supplying labor and materials that went into the road work, as well as for the benefit of Claiborne County, where the road was being built.[28] We found that the purpose of the bond was to make those parties whole; and in order to do so, the bond provided that all expenses and costs and attorneys' fees incurred by them in the enforcement of their rights should be paid by the obligors of the bond.[29] Just as the purpose of the *Stowell* bond was to make whole the suppliers and subcontractors involved, so is the purpose of the riders at issue to make the State of Mississippi whole – including the payment of all taxes, damages,

---

[26]*See Stowell v. Clark*, 118 So. 370, 372 (Miss. 1928).

[27]*Stowell*, 118 So. at 372.

[28]*Id.*

[29]*Id.* at 372.

interest, and penalties that may be due. Applying the plain and ordinary meaning of the relevant language in the riders leads to the conclusion that the sureties are liable for the payment of all taxes, damages, interest, and penalties which accrued to the State of Mississippi, as expressly provided in each rider.

¶34. The sureties' reliance upon **State v. Moody**[30] for the proposition that a surety is liable only for interest that accrues after demand on the surety, is misplaced. The rule of law to be taken from **Moody**, and that the sureties rely upon, is essentially that

> a surety is chargeable with interest only when it has failed to make good after the defalcation has been called to its attention . . . . Nevertheless, interest in excess of the maximum penalty of the undertaking may become due from the surety, but only because of the surety's own default. Nothing is due from the surety until he is notified of his principal's delinquency; if he then unjustly withholds payment, he is liable for interest because of his unjustifiable detention of the money. He is not required to take the initiative in making payment, and stands only as security until a claimant makes actual demand; then only does interest begin to accrue.[31]

¶35. However, the Tax Commission asserts that this rule stands merely for the proposition that interest beyond the penal sum can be collected from a surety on account of the surety's default only after notice to the surety; not that interest can never be included in the penal sum, especially where the surety specifically has contracted to pay interest and penalties. According to the *Restatement (Third) of Suretyship and Guaranty*, "[w]hen the secondary obligation is a legally mandated bond, that obligation does not include any penalties imposed on the principal obligor for failure to fulfill the underlying obligation unless the secondary

---

[30]**State v. Moody**, 189 So. 2d 586 (Miss. 1967).

[31] *Id*. at 591-592.

16

obligation so provides."[32]   In other words (and as confirmed by the Official Comment (a))

"unless the secondary obligation is held to provide that any such penalty assessed is included

as part of the underlying obligation, the secondary obligation does not include any penalties

beyond the losses suffered as a result of the principal obligor's breach of the underlying

obligation."[33]   Here, the sureties contracted through the tax riders to guarantee the "payment

of all taxes, damages, interest and penalties which may accrue to the State of Mississippi."

This plain language expressly includes all taxes, penalties, and interest which may accrue.

This is the language to which the sureties agreed, and it is  the language by which the sureties

are bound.

**II.     The trial court did not err in finding that the sureties'
constitutional right to substantive and procedural due process was
not violated when the Tax Commission failed to give notice of the
tax audits at issue.**

¶36.    The sureties complain that the Tax Commission deprived them of their substantive and

procedural due-process rights when it failed to give notice of the tax audits, resulting in the

additional taxes, penalties, damages, and interest owed to the State.  The applicable section

of the Mississippi Code makes evident that the sureties are not by law entitled to notice of

such audits and assessments.

¶37.    Mississippi Code Section 27-65-37 states in pertinent part:

> If adequate records of the gross income or gross proceeds of sales are not
> maintained . . . or if an audit of the records of a taxpayer . . . discloses that
> taxes are due and unpaid, the commissioner shall make assessments of taxes,
> damages, and interest from any information available, which shall be prima

---

[32]*Restatement (Third) of Suretyship and Guaranty* § 73 (1996).

[33]*Restatement (Third) of Suretyship and Guaranty* § 73, cmt. (a).

17

facie correct. The commissioner shall give notice to the *taxpayer* of such assessments and demand the payment of the tax, damages and interest within thirty (30) days from the date of delivery of the notice.[34]

¶38. The word "taxpayer" as used in this statute is defined as "any person[35] liable for or having paid any tax to the State of Mississippi under the provisions of this chapter."[36] A taxpayer is required to obtain a sales tax permit under Mississippi Code Section 27-65-27 before engaging in business in this state.[37] Applying the plain language of the statute to the case at hand, it is clear that the only individual or entity entitled to notice under the assessment statute is the *actual taxpayer,* as defined by Mississippi Code Section 27-65-3(e). Concurrently, the sureties are not the taxpayers as contemplated by the Legislature and are not entitled to notice of an audit or default by their principals.

¶39. Further, the actual bonds in question do not authorize the release of such information before the Tax Commission makes a claim to the surety. Each of the bonds contain the following language:

> NOTWITHSTANDING the tax information and return confidentiality provisions contained in Sections 27-65-1 et seq., 27-67-1 et seq., 27-7-1 et seq., 27-13-1 et seq., 27-7-301 et seq., and 27-55-301 et seq., Mississippi Code of 1972, and amendments thereto, principal hereby authorizes the State Tax Commission to release to surety any information relating to any claim against said surety made by the State Tax Commission which is covered by this bond.

---

[34]Miss. Code Ann. § 27-65-37 (Rev. 2010).

[35]Person means and includes any individual, firm, copartnership, joint venture, association, corporation, promoter of a temporary event, estate, trust or other group or combination acting as a unit . . . ." Miss. Code Ann. § 27-65-3(c) (Rev. 2010).

[36]Miss. Code Ann. § 27-65-3(e) (Rev. 2010).

[37]*Id.*

The bonds contain no express or implied provision requiring the Commission to provide any information to a surety relating to a claim until the actual claim is made. If the Commission had, in fact, released such information, it would have been in clear violation of Mississippi Code Sections 27-3-73 and 27-65-81. Section 27-3-73 (1) states in pertinent part:

> (1) Except in accordance with proper judicial order . . . *it shall be unlawful for the Commissioner of Revenue, or any deputy, agent, clerk or other officer or employee of the Department of Revenue, to divulge or make known in any manner the amount of income or any particulars set forth or disclosed in any report or return required on any taxes collected by reports received by the Department of Revenue* . . . The term "proper judicial order" as used in this section . . . shall include only those orders entered by a court of record in this state after furnishing notice and a hearing to the *taxpayer* and the Department of Revenue. The court shall not authorize the furnishing of such information unless it is satisfied that the information is needed to pursue pending litigation wherein the return itself is in issue, or the judge is satisfied that the need for furnishing the information outweighs that rights of the taxpayer to have such information secreted.[38]

Section 27-65-81 (1) (Rev. 2010) states, in pertinent part, that.

> [I]t shall be unlawful for the Commissioner of Revenue or any deputy, agent, clerk or other officer or employee of the Department of Revenue . . . *to divulge or make known in any manner the amount of income or any particulars set forth or disclosed on any application, report or return required.*[39]

Any person found in violation of the provisions of Section 27-3-73 is guilty of a misdemeanor, and on conviction thereof, shall be fined not more than $ 1,000 or imprisonment of not more than six months in the county jail, or both.[40] Clearly, the Tax

---

[38]Miss. Code Ann. § 27-3-73(1) (Rev. 2010) (emphasis added).

[39]Miss. Code Ann. § 27-65-81(1) (Rev. 2010) (emphasis added).

[40]Miss. Code Ann. § 27-3-73(4) (Rev. 2010).

Commission may not divulge any particulars regarding the principals' financial status; and if the Tax Commission did so, it would face potential criminal liability.

¶40.   More practically, though, the sureties have an implied obligation to know their principals.  The sureties are in the best position to monitor their principals' performance for the duration of the bonds.  Should the sureties choose not to be well-advised of their principals' financial status, they risk and may suffer the consequences.

¶41.   In addition to a surety's implied obligation of knowing its principal, a surety has the contractual ability periodically to require the principal to keep it apprised of the principal's financial status, proof of performance, and conformity to tax laws.  It may require the principal to provide waivers or powers of attorney to allow it to communicate with the Commission relative to tax issues on bonded projects.  The sureties claim that they run the risk of interfering if they attempt to stay abreast of their principals' financial statuses.  However, including such a clause in the original bonding contract not only would avoid a claim of interference, but it also would avoid this sort of dispute altogether.

¶42.   In conjunction with the above analysis, the statute which controls with regard to the sureties' due-process arguments and the Commission's demand for taxes plus penalties and interest is Mississippi Code Section 27-65-57 (in pertinent part):

> Upon failure to pay the taxes imposed under this chapter by any taxpayer who has executed any surety bond under the provisions of this chapter, the commissioner *shall give notice of such failure to the sureties* of such bond and demand payment of the tax, damages and interest within ten (10) days.  If the sureties on the taxpayer's bond shall fail or refuse to pay the penal sum demanded within the ten (10) days allowed, the commissioner shall file a notice of tax lien with the circuit clerk of the county in which the sureties reside or own property which shall be enrolled upon the judgment roll, and the

20

commissioner may proceed to collect from the sureties as hereinafter provided for collecting from any judgment debtor.[41]

¶43. Not only does Section 27-65-57 indicate that notice may not be given until after default, but the relevant statute as a whole also indicates the same. This Court has said that statutes dealing with the same or similar subject matter must be read *in pari materia* and to the extent possible, each section of the Code must be given effect so that the legislative intent can be determined."[42] Reading the confidentiality and assessment statutes together with this rule of law, it is evident that the Legislature intended that a surety's right to notice does not arise until after its principal's default. Based on this *in pari materia* reading, the Tax Commission has no duty (and, absent consent from the principal, no authority) to notify the surety before the taxpayer fails to pay a final assessment. In addition to the Tax Commission's lack of authority to give notice, the mere fact that Mississippi Code Section 27-65-21 refers only to "tax"[43] is not controlling when the Legislature's broad intent requires the Tax Commission to have a guarantee of payment of "taxes, damages, interest and penalties" as specifically set forth in the legally mandated tax riders.

¶44. Moreover, this also circles back to the premise that clear and unambiguous contracts must be given their plain meaning.[44] The plain meaning of the tax riders clearly includes

---

[41]Miss. Code Ann. § 27-65-57 (Rev. 2010) (emphasis added).

[42]***Miss. Pub. Serv. Comm'n v. Mun. Energy Agency***, 463 So. 2d 1056, 1058 (Miss. 1985) (citing ***Atwood Chevrolet-Olds, Inc. v. Aberdeen Mun. Sch. Dist.***, 431 So. 2d 926, 928 (Miss. 1983) (citation omitted)).

[43]*See* Miss. Code Ann. § 27-65-21(3) (Rev. 2010).

[44]***Britt***, 826 So. 2d at 1266.

21

taxes, damages, penalties, and interest. What is more, the fact that Section 27-65-21 uses only the word "tax," as opposed to "taxes, damages, penalties, and interest," is of little consequence to the sureties. The use of the word "tax" alone does not act as a limitation preventing the Tax Commission from collecting taxes, damages, penalties, and interest in the penal sum. Rather, applying the broad intent of the Legislature, it is likely that the use of the word "tax" includes damages, penalties and interest. On top of a statutory reading *in pari materia*, this again relates back to the plain-language application of the tax riders in issue, which include the payment of "taxes, damages, penalties, and interest." This is the language by which the sureties obligated themselves, and this is the language by which they should be bound under Mississippi contract law.

¶45. Furthermore, as noted by the chancellor, the sureties were and are in the business of issuing such bonds for a fee or premium; these bonds were issued willingly and for their own monetary benefit. It is well settled that, when a surety pays the debt of another by virtue of a bonding contract, the surety is entitled to reimbursement from the principal debtor. The sureties are large financial institutions with extensive knowledge regarding the terms and enforcement of bonds and should be presumed to understand the confidentiality policy and terms contained in the tax riders at issue. While supplying notice to the sureties prior to demand would not have burdened the Tax Commission in any way, the Tax Commission nonetheless fulfilled its statutory due-process obligations by notifying the principals of their tax status. Furthermore, not only did it fulfill its due-process obligations, the Tax Commission was and is statutorily prohibited from providing the sureties with notice of the audit, assessment, and hearings. Mississippi Code Section 27-3-73 provides in part that:

22

[e]xcept in accordance with proper judicial order . . . it shall be unlawful for the Commissioner of Revenue, or any deputy, agent, clerk or other officer or employee of the Department of Revenue, to divulge or make known in any manner the amount of income or any particulars set forth or disclosed in any report or return required on any taxes collected by reports received by the Department of Revenue.[45]

Accordingly, the principals, the parties who engaged in the conduct that precipitated the penalty, continue to be liable for the entire sum of the tax, penalties, and interest, but their obligation now lies with their sureties rather than the Tax Commission.

### III.    The trial court did not err in finding that the sureties lacked standing to contest the alleged lack of notice.

¶46.    The sureties contend that they stand in the shoes of the principals and are thus considered taxpayers entitled to notice and a hearing when their principals default. This contention also is unsound.

¶47.    The sureties are not "taxpayers" as contemplated by the Legislature and in regard to the underlying tax liabilities at issue. As discussed previously, the statutory definition of "taxpayer" found in Mississippi Code Section 27-65-3 provides that a taxpayer is "any person liable for or having paid any tax to the State of Mississippi under the provisions of this chapter."[46] In addition to this classification, the statute also requires that such person obtain a sales tax permit before engaging in business in the state.[47]

¶48.    The sureties are undoubtedly taxpayers in their own individual rights for the businesses that they operate, and they probably do pay various taxes to the taxing

---

[45]Miss. Code Ann. § 27-3-73(1) (Rev. 2010).

[46]Miss. Code Ann. § 27-65-3(e) (Rev. 2010).

[47]*Id.*

23

jurisdictions in which they do business. However, they are not the taxpayers on the tax liability that the principals incurred as a result of their construction businesses. Once the surety and principal enter into an agreement, their duties become intertwined and must be construed together.[48] The agreement puts both parties in privity with each other, thereby binding the surety to the principal's actions.[49] Accordingly, if the principal waives a known right, or by acts or representations is bound by estoppel, then so is the surety bound by estoppel as well.[50] With this in mind, it is clear that sureties are bound by the principals' initial actions when they were first notified of their default.

¶49. Lastly, the argument that the sureties, not the principals, should receive a reimbursement, should one be given, is unfounded as well. Once again, it is well-settled law that a surety has an immediate right to recovery from its principal upon payment on its behalf.[51] The surety becomes the principal's creditor after it has paid the principal's debt in full or in part, for all purposes.[52] Moreover, where a principal is known to be insolvent, after the debt has become due, the surety has an immediate right to sue to compel the principal to pay in order that the surety's position not be further harmed.[53] It follows that if the surety

---

[48]8 Miss. Practice Series, *Encyclopedia of Miss. Law* §69:2.

[49]*Parsons*, 122 So. at 549.

[50]*Id.*

[51]*See generally* **Hartford Accident & Indem. Co. v. Hewes**, 190 Miss. 225, 199 So. 93 (1940).

[52]8 Miss. Practice Series, *Encyclopedia of Miss. Law* §69:19.

[53]**Fid. & Deposit Co. of Md.**, 144 So. at 702.

is entitled to a reimbursement, then that reimbursement must come from the principal, not from the original creditor. Consequently, in the instance that a reimbursement actually is offered by the original creditor, it goes to the principal, and the surety has an automatic right to sue to compel the principal to pay the amount that was reimbursed.

**Conclusion**

¶50.   At all relevant times with regard to this consolidated appeal, the principals were the taxpayers entitled to the full protection of substantive and procedural due process. The record reflects that the Commission afforded the principals due process required by law, and the sureties were not entitled to due-process rights, which were intended for the taxpayer. Additionally, without taxpayer status, the sureties are not in a proper position to challenge these alleged issues of due process in the event it actually was violated.

¶51.   As demonstrated above, this matter hinges on Mississippi contract law. The sureties entered into contracts with the principals on various bonds, in which the payment of taxes, damages, penalties, and interest were *expressly included*. A quick reading of the language contained in the bonds and riders at issue clearly indicates this contractual relationship and liability. As the insurers, the sureties had the ability, resources, and potentially even the responsibility to investigate their principals and proceed accordingly. Failure to do so results in consequences such as these.

¶52.   Not only were the sureties not entitled to notice of the audits, assessments, and hearings afforded the taxpayers, the Commission had no authority to disclose any information regarding any particulars of the principals' incomes or financial statuses.

¶53. In each instance included in this consolidated appeal, the principal defaulted on a tax liability that was owed to the state. Upon proper notice of such default, the Tax Commission looked to the sureties of each principal for payment, as provided by statute. Based on the contractual agreements between the principals and the sureties, as expressly stated in the subject bonds and riders, the sureties were contractually obligated to pay the full tax liability, interest, and penalties for which demand was made.

¶54. **AFFIRMED.**

**WALLER, C.J., CARLSON, P.J., RANDOLPH, KITCHENS AND CHANDLER, JJ., CONCUR. DICKINSON, P.J., CONCURS IN PART AND IN RESULT WITH SEPARATE WRITTEN OPINION JOINED BY LAMAR, J. KING, J., NOT PARTICIPATING.**

**DICKINSON, PRESIDING JUSTICE, CONCURRING IN PART AND IN RESULT:**

¶55. I agree only with so much of the majority as holds that "this matter hinges on Mississippi contract law." So any right to notice from the taxpayers must flow from the contracts; the Tax Commission – which had no contract with the sureties – had no duty to provide notice to the sureties; and the sureties' ultimate liability on the bonds is a matter that, if not agreed by the parties, must be established in the courts.

**LAMAR, J., JOINS THIS OPINION**.