# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2020-CA-01173-SCT

*THE STATE AUDITOR SHAD WHITE AND
HOLMES COUNTY, MISSISSIPPI*

*v.*

*NATIONWIDE MUTUAL INSURANCE COMPANY
AND EDDIE CARTHAN*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/15/2020 |
| TRIAL JUDGE: | HON. TIFFANY PIAZZA GROVE |
| TRIAL COURT ATTORNEYS: | JAMES A. BOBO |
| | J. WADE SWEAT |
| | RON A. YARBROUGH |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANTS: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: STEPHEN FRIEDRICH SCHELVER |
| ATTORNEY FOR APPELLEES: | RON A. YARBROUGH |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | AFFIRMED - 08/05/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE KITCHENS, P.J., MAXWELL AND CHAMBERLIN, JJ.**

**MAXWELL, JUSTICE, FOR THE COURT:**

¶1.     Nationwide Mutual Insurance Company issued two public-official bonds as surety for Eddie Carthan, a member of the Holmes County Board of Supervisors. On appeal, the State Auditor claims Nationwide is liable under both bonds. But the undisputed facts show the Board never paid the premium for the first bond, which was only for a year. Instead, the Board asked if the first bond could be "converted" to a four-year bond that would cover

Carthan's entire term. Nationwide complied with the Board's request. It cancelled the first bond and issued a second bond covering Carthan's entire term for which the Board paid the premium.

¶2. After review, we find no evidence that Carthan was actually secured simultaneously by two separate bonds. Rather, the undisputed facts show the Board intended to procure and did in fact obtain *one* public-official bond in the amount of $100,000 as surety for Carthan. Because Nationwide paid $100,000 under the second, paid-for bond, the chancellor did not err by granting Nationwide summary judgment on all claims based on the first bond. Therefore, we affirm.

### Background Facts and Procedural History

### I. Public-Official Bonds

¶3. In November 2015, Carthan was elected to serve a four-year term as Holmes County Supervisor. Carthan had to have a surety bond before taking office on January 4, 2016. Miss. Code Ann. § 25-1-13 (Rev. 2018); *State ex rel. Mitchell v. Smith*, 87 Miss. 551, 40 So. 22, 24 (1906) ("If a person elected fails to give any official bond, or fails to have the official bond which he does give approved by the proper officer, he cannot lawfully be inducted into office[.]"). And on December 4, 2015, Nationwide issued Public Official Bond No. 7900686945 as a $100,000 surety for Carthan. But the stated term of this bond covered Carthan's first year of service only, ending on January 4, 2017.

¶4. Mississippi Code Section 25-1-33(1) (Rev. 2018) directs that "[t]he premiums on all bonds given by public officers and employees shall be paid out of any funds available for

2

such expenditure." Further, the Holmes County Board of Supervisors was statutorily "authorized and empowered to expend such portion of its funds as may be found necessary to pay all premiums" for Carthan's surety bond. Miss. Code Ann. § 25-1-33(2). But, undisputedly, the Board never paid the $350 premium for Public Official Bond No. 7900686945.

¶5.  Instead, on March 1, 2016, the Board's administrative assistant asked Nationwide if the one-year bond could be "converted to a 4-year bond." So Nationwide then issued Public Official Bond No. 7900687592, which provided $100,000 in coverage for Carthan's entire term—January 4, 2016, to January 4, 2020. And the Board paid the $1,120 premium.

## II.    State Auditor's Demand

¶6.  According to the State Auditor, Carthan was a de facto supervisor who was not entitled to compensation.[1] *See Mayor of Vicksburg v. Groome*, 24 So. 306, 307 (Miss. 1898) (holding that "a de facto officer cannot sustain an action for his salary"). In April 2019, the State Auditor demanded Carthan and Nationwide pay Holmes County $184,184.12—which represented the amount of county funds Carthan had been paid during his de facto service, plus interest and investigative costs.

---

[1] Under Mississippi's Constitution,"No person shall be eligible . . . to any office of profit or trust, who shall have been convicted of bribery, perjury, or other infamous crime . . . ." Miss. Const. art. 4, § 44(1). Mississippi Code Section 1-3-19 (Rev. 2019) defines "infamous crime" as any "offense[] punished with death or confinement in the penitentiary." In 1981, Carthan was convicted of simple assault on a police officer and sentenced to serve three years in prison. But when he qualified to run for supervisor, Carthan certified that he had never been convicted of an infamous crime.

¶7.    Nationwide began investigating the claim, at one point asking the State Auditor to, "[c]onsidering that the penal sum of Mr. Carthan's bond is $100,000, please explain your office's demand for $184,184.12." The State Auditor responded that Nationwide had issued two "bonds in the total amount of $200,000.00, securing the faithful performance of Carthan"—"Bond No. 7900686945 in the penal amount of $100,000.00, covers the period January 4, 2016, to January 4, 2017 and Bond No. 7900687592 in the penal amount of $l00,000.00, covers the period January 4, 2016 to January 4, 2020."

## II.    State Auditor's Lawsuit

¶8.    The State Auditor then sued Carthan and Nationwide on September 4, 2019, in the Chancery Court of the First Judicial District of Hinds County. The State Auditor alleged Nationwide breached its statutory duties as Carthan's surety and sought to recover $200,000—$100,000 under Public Official Bond No. 7900686945 and $100,000 under Public Official Bond No. 7900687592.

¶9.    In October 2019, Nationwide answered the State Auditor's complaint, asserting that it was in the process of tendering the amount it determined it owed. Nationwide advised the State Auditor that it had determined its liability under the first bond (No. 7900686945) to be $10,543.58—the amount of salary Carthan received during the three months the bond had been in effect—and its liability under the second bond (No. 7900687592) was the full bond limit of $100,000. Nationwide soon tendered $110,543.58 to the State Auditor.

¶10.    But the State Auditor took the position that the first bond (No. 7900686945) had not been cancelled in March 2016. Moreover, the State Auditor asserted that, even though this

4

bond's stated term was for one year, under Mississippi Code Section 25-1-15 (Rev. 2015), it necessarily covered Carthan's entire term of four years. So the State Auditor moved for partial summary judgment, seeking the full $100,000 on the first bond.

### IV. Nationwide's Counterclaim

¶11. Nationwide responded with a counterclaim to recoup the $10,543.58 it had paid under Bond No. 7900686945. The discovery process had revealed evidence showing the Board had never paid the premium for the first bond. Further evidence showed that, after sending a warning, Nationwide sent the Board a notice of cancellation on January 26, 2016. Nationwide asserted the first bond had in fact been cancelled for nonpayment, so the Board had not been entitled to the $10,543.58 payment.

¶12. Nationwide moved for summary judgment on its counterclaim. In response, the State Auditor argued that the first bond could not have been unilaterally cancelled and thus was as fully enforceable as the second bond. The State Auditor further claimed that Holmes County's failure to pay for this bond did not necessarily mean the surety contract failed for lack of consideration.

### V. Summary Judgment

¶13. The chancery court heard the State Auditor's and Nationwide's competing motions for summary judgment on July 1, 2020. The court concluded Nationwide was entitled to judgment as a matter of law on both the State Auditor's claim that Nationwide was liable for the entire $100,000 penalty on the first bond and Nationwide's counterclaim to recoup the $10,543.58 paid out on the first bond.

5

¶14. Specifically, the chancellor agreed with the State Auditor that, under Mississippi law, if the first bond was enforceable, it would have been effective for Carthan's entire four-year term and not just the one year stated in the bond. Interpreting Section 25-1-15(3)'s predecessor, Section 3463 of the Mississippi Code of 1906, this Court has held that "[i]f the bond contained, as executed, the conditions which the law required, the sureties can neither add to, nor detract from, those conditions by anything they may choose to insert." *Adams v. Williams*, 97 Miss. 113, 52 So. 865, 868 (1910). Applying that principle to the first bond, the chancellor concluded that Nationwide could not have shortened the bond's term to just one year because one condition required by Section 25-1-15(1) was that the bond cover Carthan's entire term or four years, whichever is less.

¶15. But the chancellor concluded the first bond was not enforceable due to the Board's nonpayment. Specifically, the chancellor could "[]not find that § 25-1-15(3) enforces a bond for which the premium was never paid." And "[t]he undisputed facts herein establish that the first bond was not completed by virtue of the payment of the required premium in accord with § 25-1-33." The State Auditor had "acknowledge[d] that no premium was ever paid for the first bond issued" and "that the second bond issued covered the entirety of Carthan's four (4) year term and met all statutory requirements for a public official bond." Consequently, the chancellor found Nationwide was not liable under the first, unpaid-for bond and thus was entitled to the mistaken $10,543.58 payment.

¶16.    The chancellor certified her order as final. *See* Miss. R. Civ. P. 54(b).[2] And the State Auditor timely appealed, prompting this Court's de novo review. ***Hyde v. Martin***, 264 So. 3d 730, 734 (Miss. 2019).

## Discussion

¶17.    "Summary judgment is only appropriate when 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" ***Id.*** (quoting Miss. R. Civ. P. 56(c)). After review, we agree with the chancellor—the material facts are not in dispute, and Nationwide is entitled to judgment as a matter of law.

### I.    Consideration

¶18.    First, the State Auditor argues the chancellor erred by "erroneously assum[ing] that monetary consideration through a premium payment was the only avenue for consideration to exist."

¶19.    The "issuance of a surety bond creates a contractual relationship between the surety and its principal." ***Fid. & Guar. Ins. Co. v. Blount***, 63 So. 3d 453, 460 (Miss. 2011). "Generally, an enforceable contract consists of an offer, an acceptance of that offer, and consideration." ***Ladner v. O'Neill (In re Estate of Davis)***, 42 So. 3d 520, 527 (Miss. 2010). The State Auditor asserts that "[a]ll that is needed to constitute a valid consideration to support an agreement or contract is that there must be either a benefit to the promisor or a

---

[2] Carthan remains a defendant in this lawsuit, though he never filed an answer and is facing a default judgment.

7

detriment to the promisee." ***Am. Olean Tile Co. v. Morton***, 247 Miss. 886, 893, 157 So. 2d 788, 790 (1963).

¶20.     In ***Morton***, this Court did enforce a supplemental construction bond for which American Olean Tile never paid a premium. But in that case, the parties *agreed* that American Olean Tile would suffer a detriment in exchange for being named the obligee under the supplemental bond. ***Id.*** at 790-91. Mississippi College had been withholding payment from its general contractor. In exchange for a supplemental bond, American Olean Tile, one of the general contractor's suppliers, agreed to allow Mississippi College to release the funds to the general contractor. ***Id.*** And it was this agreement for the release of the funds that was deemed sufficient consideration for the supplemental bond. ***Id.*** at 791.

¶21.     Turning to this case, the State Auditor asserts the detriment to Holmes County was allowing Carthan to take the oath of office. But there is no evidence that Nationwide *agreed* to supply a public-official bond *if* Holmes County would allow Carthan to take office. In other words, Carthan's being allowed to assume office was not the bargained-for consideration. ***Daniel v. Snowdoun Ass'n***, 513 So. 2d 946, 950 (Miss. 1987) ("It is generally held that for consideration to be valid, it must have been bargained for . . . ."). Instead, the agreed-upon bargain was that Nationwide would act as Carthan's surety under Public Official Bond No. 7900686945 *if Holmes County paid the $350 premium*. Carthan's being able to take the oath of office was a consequence of, not the consideration for, the surety-bond contract. The consideration was the $350 premium, which the Board never supplied.

¶22. In other words, the chancellor in this case did not make an erroneous assumption about monetary consideration. Instead, her conclusion was based on the other two essential elements of an enforceable contract—offer and acceptance. Here, the record shows Nationwide offered to act as Carthan's surety *in exchange* for the $350 premium payment. And the Board accepted that offer, agreeing to pay the $350 premium.

¶23. This conclusion is not only supported by the undisputed facts that Nationwide asked for and Holmes County agreed to pay $350 as consideration for the first bond but also is supported by Mississippi law, namely Section 25-1-33. This section lays out how premiums for public official bonds will be paid. Miss. Code Ann. § 25-1-33. Underlying this statutory provision is the assumption that public-official bonds will require premium payments. Indeed, the Board's own action of paying $1,120 for the second, four-year bond *after* Carthan had taken the oath of office belies the State Auditor's assertion that consideration had already been provided.

¶24. In short, the only consideration contemplated for the first bond was the $350 premium payment. The Board did not make this payment. So the chancellor did not err by holding the first bond was unenforceable for lack of premium payment.

## II. Promissory Estoppel

¶25. Alternatively, the State Auditor argues the chancellor still should have enforced the first bond under the doctrine of promissory estoppel.

¶26. "An estoppel may arise from the making of a promise, even though without consideration, if it was intended that the promise should be relied upon and in fact it was

9

relied upon, and if a refusal to enforce it would be virtually to sanction the perpetuation of fraud or would result in other injustice." *C. E. Frazier Constr. Co. v. Campbell Roofing & Metal Works, Inc.*, 373 So. 2d 1036, 1038 (Miss. 1979) (quoting 28 Am. Jur. 2d *Estoppel and Waiver* § 48 (1966)). So to support promissory estoppel, the State Auditor would have had to prove Nationwide made a promise on which Nationwide intended the Board rely, the Board in fact relied on that promise, and injustice would arise if that promise were not enforced. But no such evidence has been produced.

¶27. Rather, the uncontradicted facts show that it was the Board's administrative assistant who reached out to Nationwide and asked if the one-year, unpaid-for bond could be "converted to a 4-year bond." Nationwide complied with the Board's request, cancelling the first bond and issuing a second bond that retroactively covered Carthan's entire four-year term beginning January 4, 2016. So there was no promise that first bond would remain in effect despite the Board's nonpayment. There was also *no reliance* by the Board that the first bond would not be cancelled after it requested it be converted to a four-year bond. Finally, there was no detriment suffered by the Board because the second bond retroactively covered Carthan's entire four-year term beginning on January 4, 2016. Thus, there is no injustice in allowing Nationwide to do exactly what the Board asked it to do—convert the unpaid-for bond into a four-year bond for which the Board would and did pay.

**Conclusion**

¶28. The State Auditor sought to hold Nationwide liable for *double* the amount of surety the Board sought and Nationwide agreed to provide. But there was no evidentiary basis to

10

do so. While the State Auditor insists Nationwide should pay the full amount under *both* bonds, the undisputed facts show the Board never intended to be protected under two simultaneous $100,000 bonds. From the record, it is clear that the Board never asked Nationwide to issue an *additional* bond. Instead, it asked Nationwide to convert the first bond to a four-year bond. So the record is clear that it was always the Board's intent to procure and Nationwide to provide *one* $100,000 bond securing Carthan's term.

¶29. Because Nationwide paid $100,000 under Public Official Bond No. 7900687592, it satisfied its obligation as Carthan's surety. We affirm the judgment ordering the State Auditor to reimburse Nationwide the mistaken $10,543.58 under the cancelled bond and dismissing the State Auditor's claim for additional payment.

¶30. **AFFIRMED.**

**RANDOLPH, C.J., KITCHENS AND KING, P.JJ., COLEMAN, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR.**

11